# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

SAMUEL OROZCO-ACOSTA, aka
Benito Contreras-Mesa,
*Defendant-Appellant.*

No. 09-50192

D.C. No.
3:08-cr-02412-
LAB-1

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted
March 2, 2010—Pasadena, California

Filed May 26, 2010
Amended June 9, 2010

Before: William C. Canby, Jr., Ronald M. Gould and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Canby

## COUNSEL

Matthew J. Gardner, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

James Fife, Assistant Federal Public Defender, San Diego, California, for the defendant-appellant.

## ORDER

The opinion in this case filed by this court on May 26, 2010, slip op. 7534, is amended as follows:

At slip op. at 7538, first sentence of the second full paragraph, indicate a footnote following "Because the government concedes that the introduction of the CNR violated Orozco-Acosta's confrontation right,". The indicated footnote is to be numbered 3, with following footnotes renumbered accordingly. The new footnote 3 then is to state:

> The government was well-advised to make this concession. Although prior to the Supreme Court's decision in *Melendez-Diaz*, our case law consistently held that a CNR was nontestimonial, *see, e.g.*,

*United States v. Cervantes-Flores*, 421 F.3d 825, 830-34 (9th Cir. 2005); *United States v. Salazar-Gonzalez*, 458 F.3d 851, 853-54 (9th Cir. 2006), that line of decisions is clearly inconsistent with *Melendez-Diaz. Melendez-Diaz* held to be testimonial affidavits reporting the results of forensic analysis establishing that seized material was cocaine. 129 S. Ct. at 2532. The affidavits were held to be testimonial primarily because they were statements of what a witness would testify if called and were prepared for the known purpose (indeed, the *only* purpose) of use at the defendant's trial. *Id.* This reasoning is clearly applicable to the CNR in this case, and is irreconcilable with our prior decision in *Cervantes-Flores* and its progeny. Accordingly, we are required to follow *Melendez-Diaz* and to consider our prior decisions overruled to the extent of their irreconcilability with *Melendez-Diaz. See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (holding that where intervening higher authority is irreconcilable with established circuit law, a three-judge panel "should consider [itself] bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled"). Thus, the CNR in the present case is testimonial.

## OPINION

CANBY, Circuit Judge:

Samuel Orozco-Acosta was convicted by a jury of illegally re-entering the United States following removal, in violation of 8 U.S.C. § 1326. On appeal, Orozco-Acosta contends that the admission into evidence of a certificate of non-existence of record and of a warrant of removal violated his rights under

the Sixth Amendment's Confrontation Clause. He also challenges the district court's refusal to give a requested jury instruction and argues that his sentence was procedurally and substantively unreasonable. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We affirm Orozco-Acosta's conviction and sentence.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 25, 2008, a border patrol agent discovered Orozco-Acosta, a Mexican national, just north of the United States-Mexico border in a desolate area frequented by aliens illegally crossing into the United States. Orozco-Acosta admitted to the agent that he was a Mexican citizen and had no documents allowing him to be in the United States legally. He also later gave a sworn statement indicating that he had been deported earlier that year and had not sought permission to re-enter.

A federal grand jury indicted Orozco-Acosta for being found in the United States following removal, in violation of 8 U.S.C. § 1326.[1] Prior to trial, the government moved in

---

[1] 8 U.S.C. § 1326 provides, in pertinent part:

(a) . . . [A]ny alien who—

    (1)  has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter

    (2)  enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

shall be fined under Title 18, or imprisoned not more than 2 years, or both. 18 U.S.C. § 1326(a).

limine to introduce a warrant of removal to establish that Orozco-Acosta had been deported from the United States on January 26, 2008. The government also sought to introduce a certificate of non-existence of record ("CNR") to show that there was no record that Orozco-Acosta had ever applied for, or been granted, permission to re-enter the United States following his removal.[2] The district court overruled Orozco-Acosta's objections that admission of these documents would violate his rights under the Sixth Amendment's Confrontation Clause, and both documents were admitted into evidence at Orozco-Acosta's trial.

The jury also heard the testimony of Agent Dwain Holmes, the custodian of Orozco-Acosta's Alien Registration File ("A-File"). An A-File contains paper records concerning an alien's immigration status, including records of removal and applications for re-entry. Agent Holmes testified that his review of Orozco-Acosta's A-File, as well as an agency computer database, C.L.A.I.M.S., disclosed no documentation that Orozco-Acosta had applied for permission to re-enter the United States.

The jury found Orozco-Acosta guilty of violating 8 U.S.C. § 1326. The district court sentenced Orozco-Acosta to seventy-one months in prison, followed by three years of supervised release, and ordered a $100 assessment.

---

[2]The permission required by § 1326(a)(2)(A) is the consent of the Attorney General to the alien's *reapplying* for admission. *See* note 1, supra. Because admission is ordinarily a routine procedure once the Attorney General consents to reapplication, we and the parties frequently use the common shorthand of referring to the Attorney General's consent as "consent to re-admission or re-entry."

## DISCUSSION

### I. Confrontation Clause

[1] The Confrontation Clause of the Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that the Confrontation Clause guarantees a defendant's right to confront those "who 'bear testimony' " against him. *Id.* at 51 (citation omitted). The Court ruled that "[t]estimonial statements of witnesses absent from trial [are admissible] only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Id.* at 59. The Court described various formulations of the "core class" of testimonial statements without expressly endorsing any formulation. *Id.* at 51-52. Among the examples so discussed were "statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions" as well as "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* at 51-52 (ellipsis, internal quotations and citations omitted). On the issue before it, the Court held that statements taken by investigating police officers during interrogations were testimonial "under even a narrow standard." *Id.* at 52.

Recently, in *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527 (2009), the Supreme Court shed additional light on the contours of the term "testimonial." The Court held that "certificates of analysis" by laboratory technicians confirming that substances possessed by the defendant were cocaine were testimonial statements under *Crawford*. *Id.* at 2532. The Court emphasized that the certificates were "quite plainly affidavits" and were "functionally identical to live, in-court testimony." *Id.* at 2532. Moreover, not only were the certificates " 'made

under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial,' " *id.* (quoting *Crawford*, 541 U.S. at 52), but under state law the "*sole purpose* of the affidavits" was to provide evidence at trial. *Id.*

Relying upon *Melendez-Diaz*, Orozco-Acosta challenges the district court's introduction into evidence of the CNR and the warrant of removal. He argues that both the CNR and the warrant of removal are testimonial and that, because he never had the opportunity to cross-examine their declarants, the introduction of these documents violated his right to confront witnesses against him. The government concedes that introduction of the CNR was error under *Melendez-Diaz*, but argues that the error was harmless beyond a reasonable doubt. The government also maintains that introduction of the warrant of removal into evidence did not violate the Confrontation Clause post-*Melendez-Diaz*.

### *Certificate of Non-Existence of Record (CNR)*

To convict Orozco-Acosta of violating § 1326, the government was required to prove that Orozco-Acosta, after being removed, re-entered the United States without permission to reapply for admission. *See* 8 U.S.C. § 1326(a)(2)(A); *United States v. Barragan-Cepeda,* 29 F.3d 1378, 1381 (9th Cir. 1994). As part of its proof on this element, the government introduced the CNR, in which a District Director of the Citizenship and Immigration Services of the Department of Homeland Security certified that "after a diligent search [of two agency databases,] no record was found to exist indicating that [Orozco-Acosta] obtained consent . . . for re-admission in the United States."

**[2]** Because the government concedes that the introduction of the CNR violated Orozco-Acosta's confrontation right,[3]

---

[3]The government was well-advised to make this concession. Although prior to the Supreme Court's decision in *Melendez-Diaz*, our case law con-

"we must remand for a new trial unless the government demonstrates beyond a reasonable doubt that admission of the evidence was harmless." *United States v. Norwood*, ___ F.3d ___, 2010 WL 1236319, at *3 (9th Cir. Apr. 1, 2010). In evaluating whether a Confrontation Clause violation is harmless, we consider a variety of factors, including:

> the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). We conclude that the government has met its burden of proving harmlessness in this case.

[3] First, the CNR was cumulative of other evidence. Agent Holmes testified that if Orozco-Acosta had filed the

---

sistently held that a CNR was nontestimonial, *see, e.g.*, *United States v. Cervantes-Flores*, 421 F.3d 825, 830-34 (9th Cir. 2005); *United States v. Salazar-Gonzalez*, 458 F.3d 851, 853-54 (9th Cir. 2006), that line of decisions is clearly inconsistent with *Melendez-Diaz*. *Melendez-Diaz* held to be testimonial affidavits reporting the results of forensic analysis establishing that seized material was cocaine. 129 S. Ct. at 2532. The affidavits were held to be testimonial primarily because they were statements of what a witness would testify if called and were prepared for the known purpose (indeed, the *only* purpose) of use at the defendant's trial. *Id.* This reasoning is clearly applicable to the CNR in this case, and is irreconcilable with our prior decision in *Cervantes-Flores* and its progeny. Accordingly, we are required to follow *Melendez-Diaz* and to consider our prior decisions overruled to the extent of their irreconcilability with *Melendez-Diaz. See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (holding that where intervening higher authority is irreconcilable with established circuit law, a three-judge panel "should consider [itself] bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled"). Thus, the CNR in the present case is testimonial.

form required to reapply for admission, this fact would have been documented both in Orozco-Acosta's A-File and in the agency's C.L.A.I.M.S. database, but no such documentation appeared in either place. Any doubt arising from the possibility that Agent Holmes's record search was less comprehensive than the search conducted for the CNR was allayed by the introduction of Orozco-Acosta's own sworn statement that he had not applied for permission to re-enter, as well as the arresting agent's testimony that Orozco-Acosta admitted that he lacked documents allowing him to be in the United States legally. The jury also could infer that Orozco-Acosta lacked permission to re-enter the United States from the circumstances of his apprehension: rather than entering through a designated Port of Entry, as would be expected if Orozco-Acosta had received permission to re-enter the United States, Orozco-Acosta was apprehended in a desolate, inhospitable, and uninhabited border area. Thus, the government's case on the lack-of-permission element was overwhelming, even without the CNR.

**[4]** Orozco-Acosta had an adequate opportunity to cross-examine the witnesses who testified against him. These witnesses included Agent Holmes, who reviewed Orozco-Acosta's A-File, Agent Bourne, who prepared Orozco-Acosta's sworn statement, and Agent Thompson, who apprehended Orozco-Acosta near the border. We reject Orozco-Acosta's contention that his ability to cross-examine Agent Holmes was unduly limited by the district court's refusal to order the production of notes Agent Holmes made while reviewing Orozco-Acosta's A-file.[4] Nothing prevented counsel for Orozco-Acosta from pressing Agent Holmes on the

---

[4]To the extent that Orozco-Acosta challenges the district court's refusal to compel production of the notes as a matter of the Jencks Act, 18 U.S.C. § 3500(b), we hold that this challenge fails. We find the notes akin to notes of surveillance observations, which are not covered by the Jencks Act. *See United States v. Bobadilla-Lopez*, 954 F.2d 519, 521-23 (9th Cir. 1992); *United States v. Bernard*, 623 F.2d 551, 557-58 (9th Cir. 1980).

manner in which he conducted the A-File search, but counsel did not do so. In fact, the question of whether Orozco-Acosta had applied for permission to re-enter the United States was never seriously challenged at trial. Thus, "we are convinced beyond any reasonable doubt . . . that the jury would have convicted [Orozco-Acosta] on the elements of [§ 1326] regardless of the [introduction of the CNR]." *Norwood*, 2010 WL 1236319, at *4.

### *Warrant of Removal*

To convict Orozco-Acosta, the government also was required to prove beyond a reasonable doubt that Orozco-Acosta, prior to being apprehended, had in fact been physically removed from the United States. *See, e.g.*, *United States v. Estrada-Eliverio*, 583 F.3d 669, 671 (9th Cir. 2009). As part of its proof, the government introduced the warrant of removal, which both ordered that Orozco-Acosta be removed from the United States and also documented Orozco-Acosta's physical removal to Mexico. We review de novo whether the admission of this warrant violated Orozco-Acosta's confrontation right. *See, e.g.*, *United States v. Orellana-Blanco*, 294 F.3d 1143, 1148 (9th Cir. 2002).

**[5]** Resolution of this issue is controlled by our previous decision in *United States v. Bahena-Cardenas*, 411 F.3d 1067 (9th Cir. 2005). *In Bahena-Cardenas*, we held, post-*Crawford*, that a warrant of removal is "nontestimonial because it [is] not made in anticipation of litigation, and because it is simply a routine, objective, cataloguing of an unambiguous factual matter." *Id.* at 1075. We reasoned that warrants of removal have "inherent reliability because of the Government's need to keep accurate records of the movement of aliens." *Id.* (quoting *United States v. Hernandez-Rojas*, 617 F.2d 533, 535 (9th Cir. 1980)) (internal quotation mark omitted).

We reject Orozco-Acosta's contention that *Melendez-Diaz* has so undermined *Bahena-Cardenas* that we should depart

from its holding. *See Miller v. Gammie*, 335 F.3d 889, 892-93 (9th Cir. 2003) (en banc) (explaining that a three-judge panel should consider itself bound by an intervening higher authority that is "clearly irreconcilable with the reasoning or theory" of a prior holding of this court). Orozco-Acosta is correct that, post-*Melendez-Diaz*, neither the warrant's routine, objective nature nor its status as an official record necessarily immunizes it from confrontation. *See Melendez-Diaz*, 129 S. Ct. at 2536-40. *Bahena-Cardenas*'s holding that warrants of removal are nontestimonial, however, also relied upon the fact that warrants of removal are "not made in anticipation of litigation," but rather to record the movements of aliens. 411 F.3d at 1075. *Melendez-Diaz* explained that "[b]usiness and public records are generally admissible absent confrontation . . . because—having been created for the administration of an entity's affairs *and not for the purpose of establishing or proving some fact at trial*—they are not testimonial." 129 S. Ct. at 2539-40 (emphasis added). Thus, far from undermining *Bahena-Cardenas*, *Melendez-Diaz* is wholly consistent with *Bahena-Cardenas*.

Orozco-Acosta attacks the underlying premise of *Bahena-Cardenas*, arguing that warrants of removal qualify as testimonial because they are "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Melendez-Diaz*, 129 S. Ct. at 2532 (quoting *Crawford*, 541 U.S. at 52) (internal quotation marks omitted). The problem with this argument is that it is based on one of *Crawford*'s formulations of testimonial statements. We decided *Bahena-Cardenas* after *Crawford* and squarely held that warrants of removal are not testimonial under *Crawford*. *Bahena-Cardenas*, 411 F.3d at 1075. We are bound by that determination, and the binding effect is not weakened by the repetition, without further development, of *Crawford*'s "objective witness" formulation in *Melendez-Diaz*. *See Melendez-Diaz*, 129 S. Ct. at 2542 ("This case involves little more than the application of our holding in *Crawford* . . . .").

**[6]** *Melendez-Diaz*, moreover, repeatedly emphasized that the certificates of analysis in that case were prepared solely for use at the defendant's trial. *See id.*; *see also id.* at 2539 (the certificates' "sole purpose" was "providing evidence against a defendant"); *id.* at 2540 (the certificates were "prepared specifically for use at petitioner's trial"). Unlike the certificates of analysis in *Melendez-Diaz*, neither a warrant of removal's sole purpose nor even its primary purpose is use at trial. A warrant of removal must be prepared in every case resulting in a final order of removal, *see* 8 C.F.R. § 241.2; *see also* 241.3, and nothing in the record or judicially noticeable suggests that more than a small fraction of these warrants ultimately are used in immigration prosecutions.[5] *Accord United States v. Burgos*, 539 F.3d 641, 645 (7th Cir. 2008) ("The [warrant of removal's] primary purpose is to memorialize the deportation, not to prove facts in a potential future criminal prosecution."); *United States v. Torres-Villalobos*, 487 F.3d 607, 613 (8th Cir. 2007) ("Warrants of deportation are produced under circumstances objectively indicating that their primary purpose is to maintain records concerning the movements of aliens and to ensure compliance with orders of deportation, not to prove facts for use in future criminal prosecutions."). *Melendez-Diaz* cannot be read to establish that the mere possibility that a warrant of removal—or, for that matter, any business or public record—could be used in a later criminal prosecution renders it testimonial under *Crawford*. *Accord United States v. Mendez*, 514 F.3d 1035, 1046 (10th Cir. 2008) ("That a piece of evidence may become 'relevant

---

[5]To illustrate, we take judicial notice of the fact that while nearly 281,000 aliens were removed from the United States pursuant to final orders of removal in 2006, *see* U.S. Dep't of Homeland Sec., Office of Immigration Statistics, *Yearbook of Immigration Statistics* 95 (2008), *available at* http://www.dhs.gov/xlibrary/assets/statistics/yearbook/2008/ois_yb_2008.pdf, just over 17,000 federal prosecutions for immigration offenses were commenced during approximately the same time period, *see* U.S. Dep't of Justice, Bureau of Justice Statistics, *Federal Judicial Statistics* tbl. 4.1 (2006), *available at* http://bjs.ojp.usdoj.gov/content/pub/html/fjsst/2006/fjs06st.pdf.

to later criminal prosecution' does not automatically place it within the ambit of 'testimonial.' . . . [Otherwise,] any piece of evidence which aids the prosecution would be testimonial and subject to Confrontation Clause scrutiny."). We accordingly reject Orozco-Acosta's argument that *Melendez-Diaz* renders warrants of removal testimonial.

[7] In sum, nothing in *Melendez-Diaz* is clearly irreconcilable with *Bahena-Cardenas*'s holding that a warrant of removal is "nontestimonial because it was not made in anticipation of litigation." 411 F.3d at 1075. We therefore are not at liberty to depart from that holding. We conclude that admission of the warrant of removal into evidence at Orozco-Acosta's trial did not violate the Sixth Amendment.

## II.   Jury Instructions

[8] Orozco-Acosta argues that the district court erred in refusing to give his proposed circumstantial evidence instruction, thus preventing him from adequately presenting his defense theory that he lacked knowledge that he was in the United States. The district court's formulation of jury instructions is reviewed for abuse of discretion. *United States v. Frega*, 179 F.3d 793, 807 n.16 (9th Cir. 1999). "In reviewing jury instructions, the relevant inquiry is whether the instructions as a whole are misleading or inadequate to guide the jury's deliberation. The trial court has substantial latitude so long as its instructions fairly and adequately cover the issues presented." *Id.* (internal citation omitted). We review de novo whether the jury instructions adequately presented the defendant's theory of the case. *United States v. Somsamouth*, 352 F.3d 1271, 1274 (9th Cir. 2003).

Orozco-Acosta's requested instruction was nearly identical to California standard criminal jury instruction ("CALJIC") 2.01, concerning circumstantial evidence.[6] Orozco-Acosta

---

[6]Orozco-Acosta's requested instruction read:

    A finding of guilt as to any crime may not be based on circum-

claims that this instruction was necessary to the jury's consideration of his defense theory that he lacked knowledge that he was in the United States. Specifically, he argues that the element of knowledge necessarily would be proven by circumstantial evidence and that the district court's refusal to read his proposed instruction prejudiced him because no other instruction described the manner in which the jurors were to evaluate circumstantial evidence.

**[9]** We previously rejected a similar argument under similar circumstances. In *United States v. James*, 576 F.2d 223 (9th Cir. 1978), the defendant requested a jury instruction that was virtually identical to that requested by Orozco-Acosta, claiming that "his entire defense was dependent upon the jury's understanding of the nature and the significance of circumstantial evidence." *Id.* at 226. We explained that "neither party, including a criminal defendant, may insist upon any particular language" and found no abuse of discretion in the

---

stantial evidence unless the proved circumstances are not only (1) consistent with the theory that the defendant is guilty of the crime, but (2) cannot be reconciled with any other rational conclusion.

Further, each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt. In other words, before an inference essential to establish guilt may be found to have been proved beyond a reasonable doubt, each fact or circumstance on which the inference necessarily rests must be proved beyond a reasonable doubt.

Also, if the circumstantial evidence as to any particular count permits two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, you must adopt that interpretation that points to the defendant's innocence, and reject that interpretation that points to his guilt.

If, on the other hand, one interpretation of this evidence appears to you to be reasonable and the other interpretation to be unreasonable, you must accept the reasonable interpretation and reject the unreasonable.

district court's refusal to give the requested instruction because the jury instructions as a whole were adequate. *Id.* at 226-27.

**[10]** The instructions in this case, as a whole, also were adequate to guide the jury's deliberation. As in *James*, the district court in this case "instructed the jury on the meaning and significance of direct and circumstantial evidence."[7] *Id.* at 227; *see also id.* at 227 n.2. The district court's instruction on the reasonable doubt standard was sufficient to ensure that the jurors understood "their duty in the event they concluded that the evidence reasonably permitted a finding of either guilt or innocence."[8] *Id.* at 227; *see also United States v. Miller*, 688

---

[7]The district court in this case instructed the jury:

Remember, also, evidence can [be] direct or circumstantial.

Direct evidence directly proves a fact such as testimony by an eyewitness about what the witness saw or heard or did. Circumstantial evidence, in contrast, is indirect evidence. It's proof of a fact from which you can find another fact exists.

Both direct and circumstantial evidence are competent ways of proving facts. It's up to you ultimately to decide how much weight to give either form of evidence.

[8]The jury in this case was instructed:

I've told you that the burden on the government is to prove this case beyond a reasonable doubt. . . . Let me tell you how the law defines that term.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced that the defendant's guilty. The government's not required to prove guilt beyond all possible doubt. Rather, a reasonable doubt is a doubt based on reason and common sense and not based purely on speculation or guesswork. Reasonable doubt may arise from a careful and impartial consideration of all the evidence or it may arise from a lack of evidence.

If, after you've carefully and impartially considered the evidence in this case, you're not convinced beyond a reasonable doubt that the defendant is guilty, then you must find him not guilty.

On the other hand, if, after you've weighed and considered everything carefully, you find yourselves convinced beyond a reasonable doubt that the defendant's guilt has been shown, then it is your duty to find him guilty.

F.2d 652, 662 (9th Cir. 1982). In light of *James*, the district court's conclusion that the other jury instructions adequately covered the substance of Orozco-Acosta's proposed instruction was not an abuse of discretion. In addition, the district court read Orozco-Acosta's requested defense theory instruction,[9] ensuring that the jury instructions as a whole adequately presented his theory of the case. There was no instructional error.

## III.   Sentence

Orozco-Acosta's final challenge is to his sentence. In reviewing a sentence, we first consider whether the district court committed significant procedural error. *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc). In determining whether the district court committed procedural error, we review, *inter alia*, the district court's interpretations of the federal Sentencing Guidelines. *See United States v. Bendtzen*, 542 F.3d 722, 724-25 (9th Cir. 2008). If no procedural error is found, we then review the sentence for substantive reasonableness under the abuse of discretion standard. *United States v. Ressam*, 593 F.3d 1095, 1120-22 (9th Cir. 2010).

[11] We find no procedural error in this case. Because Orozco-Acosta was convicted of violating 8 U.S.C. § 1326, he properly was given a base offense level of eight. U.S. Sentencing Guidelines Manual § 2L1.2 (2008). The Guidelines also provide for a sixteen-level upward adjustment "[i]f the defendant previously was deported . . . after . . . a crime of violence." *Id.* § 2L1.2(b)(1)(A)(ii). Orozco-Acosta was

---

[9]The jury was instructed:

> Mr. Orozco's theory of defense in this case is that he did not know he was in the United States on June 25th, 2008. I remind you that unless the government establishes beyond a reasonable doubt either that he knew he was entering the United States or he realized he was in the United States and then knowingly remained here, you must find him not guilty.

deported after being convicted of California Penal Code section 288(a), which criminalizes lewd and lascivious acts upon a child under the age of fourteen. *See* Cal. Penal Code § 288(a). In *United States v. Medina-Villa*, 567 F.3d 507 (9th Cir. 2009), *cert. denied*, 130 S. Ct. 1545 (2010) (mem.), we recently reaffirmed that section 288(a) is a "crime of violence" for purposes of § 2L1.2(b)(1)(A)(ii). *Id.* at 516; *see also United States v. Medina-Maella*, 351 F.3d 944, 947 (9th Cir. 2003). Accordingly, Orozco-Acosta's claim that the district court erred by applying the sixteen-level crime-of-violence enhancement is foreclosed by our precedent.[10]

[12] We also conclude that Orozco-Acosta's sentence was substantively reasonable. The district court imposed a sentence in the middle of the Guidelines range after carefully and rationally considering the factors in 18 U.S.C. § 3553(a). The district court emphasized the need to protect the public in light of the seriousness of Orozco-Acosta's prior section 288(a) conviction. In determining whether Orozco-Acosta posed a continuing threat to the public, the district court was entitled to make reasonable inferences about the import of the women's underwear found in Orozco-Acosta's pocket and his incredible explanation for its presence. The district also cited the fact that Orozco-Acosta previously had been deported from the United States ten times, and that Orozco-Acosta's advanced age had not stopped him from illegally entering the United States in the present offense. In light of these considerations, the district court's Guidelines-range sentence was not an abuse of discretion.

Orozco-Acosta's reliance on *United States v. Amezcua-Vasquez*, 567 F.3d 1050 (9th Cir. 2009), also is unavailing. In *Amezcua-Vasquez*, we held that application of the § 2L1.2(b)(1)(A)(ii) crime-of-violence enhancement was substantively unreasonable in light of the staleness of the defen-

---

[10]We have considered Orozco-Acosta's arguments that we may depart from *Medina-Villa*'s holding, and we find them meritless.

dant's prior conviction. *Id.* at 1055. Although Orozco-Acosta's section 288(a) conviction was similarly aged, *Amezcua-Vasquez* "[made] no pronouncement as to the reasonableness of a comparable sentence were . . . 'the need . . . to protect the public from further crimes of the defendant' . . . greater," *id.* at 1058 (quoting 18 U.S.C. § 3553(a)(2)(c)), or the case presented "other aggravating sentencing considerations," such as the need for adequate deterrence, *id.* at 1057. In light of the district court's findings that Orozco-Acosta's sentence was necessary to protect the public and to deter him from subsequent re-entry, *Amezcua-Vasquez* is not controlling, and we hold that Orozco-Acosta's sentence was substantively reasonable.

## CONCLUSION

Orozco-Acosta's conviction and sentence are

**AFFIRMED.**