TASHIMA, Circuit Judge,
concurring in part and dissenting in part:
I agree with the majority that the district court failed properly to instruct the jury on the meaning of “willful.” However, I must dissent from Parts III.A and III.B of the majority opinion because: (1) the evidence presented at trial makes clear that the erroneous jury instruction was not harmless beyond a reasonable doubt; and (2) the introduction of Government Exhibits 5 and 6 violated Berry’s Confrontation Clause rights and was also not harmless beyond a reasonable doubt. For each of these reasons, I would reverse and remand for a new trial.
I
I agree with the majority that the jury instructions merged the definition of “willful” into the definition of “knowing,” and, thus, misstated the law by reading the requirement of willfulness out of the statute. See Maj. Op. at 1020-21. The question on which I part company with the majority is whether this error was harmless. “If a jury instruction misstates an element of a statutory crime, the error is harmless only if it is ‘clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.’ ” United States v. Awad, 551 F.3d 930, 938 (9th Cir.2009) (quoting Neder v. United States, 527 U.S. 1, 18, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)). The majority concludes that the jury instruction misstated an element of the offense but, relying on Awad, deems this error harmless beyond a reasonable doubt. I respectfully disagree.
*1026 I agree that it is possible that the jury could have convicted Berry had it been properly instructed on the meaning of “willful.” But that possibility does not satisfy the requirement that an error of constitutional dimension be harmless beyond a reasonable doubt. “A reviewing court making this harmless-error inquiry does not ... ‘become in effect a second jury to determine whether the defendant is guilty.’ Rather a court, in typical appellate-court fashion, asks whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element.” Neder, 527 U.S. at 19, 119 S.Ct. 1827 (citation omitted). Here, the record contains ample evidence that could have rationally led to a contrary finding if the jury had been properly instructed.
The majority concludes that “once Berry was notified of his obligations as a representative payee, he was aware that using the payments other than for D.B.’s benefit was unlawful.” Maj. Op. at 1021. But the evidence that Berry acted “willfully” — that he knew he was breaking the law — is weak. There is no direct evidence that Berry was ever notified of his obligations as representative payee. The main evidence of Berry’s notification of his obligations is found in Government Exhibits 5 and 6.[1] These exhibits, prepared by Social Security Administration (“SSA”) employee Jerry Fan, are computer records of Berry’s applications to be a representative payee and for D.B.’s insurance benefits. Each summarizes conversations that Fan purportedly had with Berry. The exhibits suggest that Fan mentioned the responsibilities to Berry. But Fan did not testify at trial. A few months after Fan interviewed Berry, Fan resigned in anticipation of being terminated because his work performance did not meet expectations. The computer records are unsigned, and the SSA lost Berry’s application file. Bob Andrews, Fan’s supervisor, testified that he had not seen Berry’s signature on his applications.
The majority notes that Andrews testified “that Berry was counseled over the telephone regarding his responsibilities and obligations as a payee representative.” Maj. Op. at 1022. In fact, Andrews testified that he had no personal knowledge as to whether Berry actually was counseled regarding his obligations.[2] Andrews testified that he did not have personal knowledge as to whether Fan asked Berry if Berry understood his obligations as a representative payee, or whether Fan told Berry how he had to spend or save the money.
The majority also points out that Deanna Barrios-Terry, a management analyst for the SSA, “testified that information regarding the obligations and responsibilities of a representative payee is mailed as part of a routine administrative process.” Maj. Op. at 1022. Barrios-Terry testified that this mailing consisted of three pamphlets, entitled “The Guide for the Representative Payees,” “What You Need to Know When You Get Retirement or Sur *1027 vivor’s Benefits,” and “Your Right to Question the Decision Made on Your Claim.” There was no evidence presented that Berry in fact read and understood these pamphlets. The majority relies on the presumption in civil cases that an addressee received mailed documents. Mahon v. Credit Bureau of Placer Cnty., Inc., 171 F.3d 1197, 1202 (9th Cir.1999). This is too thin a reed to establish that the lack of a willfulness instruction was harmless beyond a reasonable doubt.
In contrast, Awad found the willful instruction error harmless because there was direct evidence that Awad knew that his conduct was unlawful. Awad submitted signed certifications with each fraudulent claims form acknowledging that he understood submitting false or misleading Medicare claims could lead to criminal punishment. 551 F.3d at 940. There is no such evidence here.
There was no evidence of obvious lawbreaking before the jury. Insofar as the record shows, all but a couple hundred dollars of the benefits money transferred by Berry to various accounts still remains there today. Although this may amount to bad accounting practice for a trustee, there is no evidence that the money was misspent for a purpose other than for the benefit of D.B., Berry’s minor son. In comparison, Awad charged for services he never rendered — including submitting claims for services supposedly rendered on dates when the doctor was out of the country, and went from struggling financially to turning a multi-million dollar profit in just three years. Id. at 935, 941. Thus, in Awad the district court’s jury instruction on willfulness, although erroneous, was harmless beyond a reasonable doubt because Awad’s scheme was “so bold and simple that no reasonable person could have thought it lawful.” Id. at 941.
Finally, the most important reason that Awad found the instruction error harmless is absent in this case. In Awad, the jury had to find that Awad “inten[ded] to deceive or cheat” in order to find him guilty. Id. at 940. In addition, “the jury was instructed that a good faith belief that the acts were lawful was a complete defense ‘because good faith on the part of the defendant is, simply, inconsistent with a finding of an intent to defraud.’ ” Id. at 940-41. Given these instructions, “[n]o reasonable jury could have found that a physician intended to deceive or cheat the Federal Government but did not know that such conduct is unlawful, especially in light of the warnings on the claim forms.” Id. at 940.
That critical element in Awad is missing here. Here, the district court did not give any other instruction informing the jury that it had to assign a bad purpose to Berry’s actions in order to convict. According to the jury instructions, the jury needed to find that Berry “made an application to receive a Social Security benefit” for D.B., that he “received such a benefit payment,” that he “converted the benefit payment, or any part thereof, to a use other than for the use and benefit” of D.B., and that he did so “knowingly and willfully,” which was defined as “aware of the act” but not necessarily knowing “that his acts or omissions were unlawful.” Unlike in Awad, the jury made no other finding from which we can conclude that, despite the erroneous instruction, the jury must have concluded that Berry acted willfully in order to find him guilty.
It is not clear beyond a reasonable doubt that a rational jury would have found Berry guilty absent the erroneous instruction given the sketchiness of the evidence presented at trial. If the jury was instructed that to convict, it had to find Berry acted with the knowledge that his conduct was unlawful, they reasonably could have returned a not guilty verdict given the evi *1028 dence in the record. For this reason alone, I would reverse and remand for a new trial.
II
I also dissent from the majority’s holding that the introduction of Government Exhibits 5 and 6 did not violate Berry’s rights under the Confrontation Clause. Testimonial evidence made by an available declarant may not be introduced against a criminal defendant unless the defendant has the opportunity to cross-examine the declarant. Crawford v. Washington, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Because portions of Exhibits 5 and 6 that were introduced against Berry are testimonial, their introduction against Berry violated his Confrontation Clause rights. And because their introduction was not harmless, I would also reverse and remand for this failure alone.
In this case, we confront a factual scenario not previously addressed by the Supreme Court. The exhibits in this case are hybrid public records: parts were created for the administration of the SSA’s affairs, but other parts were created for the purpose of establishing or proving a fact at trial. As explained above, Government Exhibits 5 and 6 are computerized records of Berry’s applications and summarize conversations that Fan purportedly had with Berry. Exhibit 5 states “I know that anyone who makes or causes to be made a false statement or representation of material fact relating to a payment under the Social Security Act commits a crime punishable under Federal law.” Exhibit 6 contains similar language. Exhibit 5 also states “I ... [m]ay be punished under Federal law by fíne, imprisonment, or both if I ... am., found guilty of misuse Social Security or SSI benefits.” Exhibit 6 also states “I WILL BE HELD PERSONALLY LIABLE FOR REPAYMENT OF BENEFITS I RECEIVE IF THEY ARE NOT SPENT OR SAVED FOR THE CHILD.” Each was prepared by Fan, and neither was signed by Berry.
Fan did not testify at Berry’s trial. Instead, these exhibits were introduced with the testimony of Deanna Barrios-Terry, who testified about general record-keeping procedures at the SSA. Robert Andrews, Fan’s supervisor, also testified about these exhibits. Andrews testified that he did not have personal knowledge as to whether Fan explained to Berry his obligations as a representative payee.
The majority explains that “[documents or records that are not created in anticipation of litigation, but because of ‘a routine, objective, cataloging of an unambiguous factual matteri are deemed nontestimonial.” Maj. Op. at 1022 (quoting United States v. Marguet-Pillado, 560 F.3d 1078, 1085 (9th Cir.2009)) (in turn, quoting United States v. Bahena-Cardenas, 411 F.3d 1067, 1075 (9th Cir.2005)). But this court has already acknowledged that “post-Melendez-Diaz, neither [the evidenee]’s routine, objective nature nor its status as an official record necessarily immunizes it from confrontation.” United States v. Orozco-Acosta, 607 F.3d 1156, 1163 (9th Cir.2010).
The majority also contrasts the “form in Orellana-Bianco ” which “was signed under oath” with the exhibits at issue here, noting that here “[n]o affidavit was executed in conjunction with preparation of the documents.” Maj. Op. at 1023. This is not a relevant distinction. In Bullcoming v. New Mexico, the Supreme Court reiterated that it would be “‘implausible’” to read the Confrontation Clause to “render inadmissible only sworn ex parte affidavits, while leaving admission of formal, but unsworn affidavits ‘perfectly OK.’ ” — U.S. -, 131 S.Ct. 2705, 2717, 180 L.Ed.2d 610 (2011) (quoting Crawford, 541 U.S. at 52-53 n. 3, 124 S.Ct. 1354). The Court explained that this construction “would make *1029 the right to confrontation easily erasable.” Id.
The Supreme Court has explained that the central question in determining whether a business or public record is testimonial is whether it was “created for the administration of an entity’s affairs and not for the purpose of establishing or proving some fact at trial.” Melendez-Diaz v. Massachusetts, 557 U.S. 305, 329, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009).[3] While the entirety of Exhibits 5 and 6 may not have been “made for the purpose of establishing or proving some fact at trial,’ ” Melendez-Diaz, 557 U.S. at 329, 129 S.Ct. 2527, the inclusion of the statements quoted above surely was. Here, the “fact in question” is whether Berry was aware of the law. It is hard to imagine what purpose including these statements in these documents could' serve aside from establishing an applicant’s knowledge of the law for a future showing of willful violation. Thus, these statements were included “solely for an evidentiary purpose,” Bullcoming, 131 S.Ct. at 2717 (internal quotation marks omitted), and are “functionally identical to live, in-court testimony, doing ‘precisely what a witness does on direct examination.’ ” Melendez-Diaz, 557 U.S. at 321, 129 S.Ct. 2527 (quoting Davis v. Washington, 547 U.S. 813, 830, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006)).
In Bullcoming, the Supreme Court’s most recent foray into the Confrontation Clause, the Court explained that “surrogate testimony of the kind [the declarant’s supervisor] was equipped to give could not convey what [the declarant] knew or observed about the events his certification concerned ... [n]or could such surrogate testimony expose any lapses or lies on the [declarantes part.” 131 S.Ct. at 2715. This is precisely the concern here. Fan’s supervisor testified about general procedures for informing applicants of their rights, but admitted that he had no personal knowledge of what Fan told Berry. This left Berry unable to cross-examine anyone as to what the interviewer/recorder “knew or observed about the events” in the interview and unable to “expose any lapses or lies.” Id. In these circumstances, in the face of a Confrontation Clause objection, the only way to protect a defendant’s Confrontation Clause rights is, at least, to redact the testimonial portion of the challenged exhibit before admitting it into evidence.
When evidence is introduced in violation of a defendant’s confrontation right, “we must remand for a new trial unless the government demonstrates beyond a reasonable doubt that admission of the evidence was harmless.” United States v. Orozco-Acosta, 607 F.3d 1156, 1161 (9th Cir.2010) (quoting United States v. Norwood, 603 F.3d 1063, 1068 (9th Cir.2010)). The error here was not harmless beyond a reasonable doubt because the testimonial evidence in Exhibits 5 and 6 is the key evidence underlying the majority’s conclusion that the concededly erroneous “willful” instruction was harmless beyond a *1030 reasonable doubt. See Maj. Op. at 1022 (noting that Fan’s supervisor testified that “Berry was counseled over the telephone regarding his responsibilities and obligations as a payee representative”). Because the introduction of this evidence violated Berry’s rights under the Confrontation Clause, I would reverse and remand for a new trial on this ground as well.
I respectfully dissent.

. These exhibits are the "computer records” that the majority asserts "definitively established that Berry was informed of his obligation to use the funds he received solely for the benefit of his son.” Maj. Op. at 1021-22.

. As I explain below, statements made by Fan in the interview notes indicate that Fan informed Berry about his responsibilities and obligations, but because Fan did not testify at trial, the introduction of these statements violated Berry’s confrontation rights. Regardless, Fan's supervisor's testimony that he had no direct knowledge of what Fan in fact informed Berry raises at least a reasonable probability the jury may have found that Berry did not act willfully, had it been properly instructed. The jury may have found that the government failed to carry its heavy burden that Berry acted willfully even if it concluded that Fan was a generally competent employee.

. The majority asserts that the Supreme Court "clarifi[ed] in Bullcoming that a document ‘ranks as testimonial’ under Melendez-Diaz, if and only if, the document was ‘created solely for an evidentiary purpose ’ and ‘made in aid of police investigation.’ ” Maj. Op. at 1023 (quoting Bullcoming, 131 S.Ct. at 2717) (emphasis added by majority). Bullcoming does note that Melendez-Diaz held that a document is testimonial if it was created solely for an evidentiary purpose and in aid of a police investigation. Bullcoming, 131 S.Ct. at 2717. But nowhere in Bullcoming does the Court state or imply that these are the only and necessary conditions under which a document is testimonial or that a document is not testimonial if both conditions are not satisfied. See also Melendez-Diaz, 557 U.S. at 324, 129 S.Ct. 2527 (“But the paradigmatic case identifies the core of the right to confrontation, not its limits.”).