**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

<table>
<tr><td>

UNITED STATES OF AMERICA,
     *Plaintiff-Appellee*,

v.

KALEENA LEAH MORALES,
     *Defendant-Appellant*.

</td><td>

No. 12-10069

D.C. No.
4:11-cr-02782-
CKJ-HCE-1

OPINION

</td></tr>
</table>

Appeal from the United States District Court
for the District of Arizona
Cindy K. Jorgenson, District Judge, Presiding

Argued and Submitted
March 13, 2013—San Francisco, California

Filed July 2, 2013

Before: M. Margaret McKeown, Consuelo M. Callahan,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

**SUMMARY**[*]

**Criminal Law**

The panel affirmed convictions for conspiracy to transport aliens who unlawfully came to or entered the United States and for transporting such aliens for private financial private gain, in a case in which the defendant challenged the admissibility of forms filled out by Border Patrol agents in the field, which included statements by the smuggled aliens that they were in the United States illegally.

The panel held that admission of the forms did not violate the Confrontation Clause, but that the aliens' admissions included in the forms were inadmissible hearsay. Because the forms are records of government agencies, the panel held that the district court erred by admitting them under the business records exception to the hearsay rule, Fed. R. Evid. 803(6). The panel also held that the aliens' statements that they were in the United States illegally do not qualify as public records under Fed. R. Evid. 803(8) because they do not describe "activities" of the government, and the government does not argue that aliens are under a "duty to report" their immigration status.

The panel held that the error was harmless because the erroneously admitted hearsay did not materially affect the verdict.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

John D. Kaufmann, Tucson, Arizona, for Defendant-Appellant.

Ryan P. DeJoe (argued), Assistant United States Attorney; John S. Leonardo, United States Attorney; Christina M. Cabanillas, Appellate Chief, Tucson, Arizona, for Plaintiff-Appellee.

## OPINION

IKUTA, Circuit Judge:

Kaleena Leah Morales appeals her convictions for one count of conspiracy to transport aliens who unlawfully came to or entered the United States, and three counts of transporting such aliens, in each case for private financial gain. *See* 8 U.S.C. § 1324. Among other claims, she challenges the admissibility of certain forms filled out by Border Patrol agents in the field, which included statements by the smuggled aliens that they were in the United States illegally.[1] We hold that the admission of the forms did not violate the Confrontation Clause, but the aliens' admissions included in the forms were inadmissible hearsay. Nonetheless, this error was harmless because the erroneously admitted hearsay did not materially affect the verdict.

---

[1] In this opinion, we address Morales's claim that the district court's admission of these forms violated her rights under the Confrontation Clause and Rule 803(8) of the Federal Rules of Evidence. We address her other claims in an unpublished memorandum filed simultaneously with this opinion.

**I**

According to the evidence adduced at trial, on July 17, 2011, Morales picked up her friend Sharae Jakaub in order to clear up the title to a car Morales had recently purchased from Jakaub. While on the highway, Jakaub mentioned that she was broke and reminded Morales about a debt Morales owed to her. Morales proposed a deal: if Jakaub agreed to help her pick up five aliens who were in the country illegally, she would give Jakaub half of the $1,500 she had been promised by an unknown third party. Jakaub readily agreed. The pair eventually exited the highway and arrived at a site filled with trailers, one of which contained the five individuals Morales had agreed to transport. Morales opened the trailer door, arranged the five people in the back of her truck, and drove back the way she came.

A few hours later, Arizona Department of Public Safety Officer Steve Kroeger observed Morales's truck driving more slowly than the rest of the highway traffic. He also noticed that her windshield was cracked. After "pacing" the vehicle for a few miles to determine its speed, he stopped the truck for suspected violations of two traffic ordinances. When Officer Kroeger approached to ask Morales for her license and registration, he spotted several other individuals lying down horizontally and attempting to hide in the backseat of the truck. When asked how many people were hiding in the backseat, Morales refused to answer. Officer Kroeger suspected that Morales and Jakaub might be involved in alien smuggling and called the U.S. Border Patrol.

The Border Patrol agents ascertained that none of the five individuals in the backseat of the truck was a United States citizen or otherwise authorized to be in the United States.

The agents arrested three of the aliens, and Agent Brian Peacock completed a field encounter form (a Field 826, now referred to as Form I-826) for each arrested alien.

The Field 826 contains three sections.[2]  The first section requires the Border Patrol agent to record the date and location of the alien's arrest, the funds found in the alien's possession, and basic biographical information about the alien, such as the alien's name, gender, and date and place of birth.  The second section contains a "Notice of Rights," and advises the alien of the reason for the arrest and corresponding rights, such as the right to a hearing, the right to obtain low-cost legal representation, and the right to communicate with legal representatives or consular officials. The third section contains a "Request for Disposition," and asks the alien to initial next to one of three options:  "I request a hearing before the Immigration Court to determine whether or not I may remain in the United States"; "I believe I face harm if I return to my country.  My case will be referred to the Immigration Court for a hearing"; or

> I admit that I am in the United States illegally, and I believe I do not face harm if I return to my country.  I give up my right to a hearing before the Immigration Court.  I wish to return to my country as soon as arrangements can be made to effect my departure.  I understand that I may be held in detention until my departure.

---

[2] We have quoted the English version of the Field 826 in this opinion. The forms in the record, which were presented to and signed by the aliens, are in Spanish.

The form includes a line for the alien's signature under these options.

In this case, an agent filled out the first section on each form. All of the aliens selected the third option in the Request for Disposition section and signed on the line provided for the alien's signature, thus admitting they were in the United States illegally and requesting to be returned to their country.

Morales was ultimately arrested and charged with one count of conspiracy to transport aliens who unlawfully came to or entered the United States, and three counts of transporting such aliens, in each case for private financial gain. 8 U.S.C. §§ 1324(a)(1)(A)(v)(I), (a)(1)(A)(ii) & (a)(1)(B)(i), 8 U.S.C. §§ 1324(a)(1)(A)(ii) & (a)(1)(B)(i). In order to sustain Morales's conviction for illegal transportation of aliens for private financial gain under 8 U.S.C. §§ 1324(a)(1)(A)(ii) & (a)(1)(B)(i), the government had to prove beyond a reasonable doubt that: (1) the persons Morales was transporting were aliens, § 1324(a)(1)(A)(ii); (2) the aliens were not lawfully in the United States, *id.*; (3) Morales knew or acted in reckless disregard of the fact that the aliens were not lawfully in the United States, *id.*; (4) Morales transported the aliens in order to help them remain in the United States unlawfully, *id.*; and (5) Morales did so for the purpose of commercial advantage or private financial gain, § 1324(a)(1)(B)(i).

After the aliens' apprehension, the government deposed them on videotape and deported them pursuant to the Federal

Material Witness Statute, 18 U.S.C. § 3144.[3]  Rather than attempting to bring them back to the United States to testify, the government sought to introduce the recordings of their depositions.  The district court declined to admit this deposition testimony because the government was unable to prove that the aliens were "unavailable" for purposes of the Confrontation Clause.

Four witnesses testified at the bench trial: Jakaub and three Border Patrol agents, Agent Benjamin Wycoff, Agent Shawn Brewer, and Agent Peacock.  Jakaub described how she and Morales agreed to share the profits from transporting the aliens and how they transported them until they were stopped by Officer Kroeger.  Next, Agent Brewer and Agent Peacock testified about their encounter with Morales and the aliens in her vehicle.  Finally, Agent Wycoff, the case agent for Morales's case, testified about the immigration status of the individuals found in Morales's car, including the information reported in the Field 826s.  He first testified that he was responsible for consulting three databases used to keep track of aliens and maintained by the immigration service in the ordinary course of its business.  His search of those databases yielded no documentation allowing the aliens to be present.  Agent Wycoff then testified about the nature

---

[3] Section 3144 states, in relevant part:

> No material witness may be detained because of inability to comply with any condition of release if the testimony of such witness can adequately be secured by deposition, and if further detention is not necessary to prevent a failure of justice.  Release of a material witness may be delayed for a reasonable period of time until the deposition of the witness can be taken pursuant to the Federal Rules of Criminal Procedure.

and purpose of the Field 826s.  He noted that agents in the field fill out the form for every individual apprehended by the Border Patrol, and that the forms are typically used to verify entries in the Border Patrol's databases because the information in these forms comes directly from the apprehended individual.  Agent Wycoff further testified that physical copies of the Field 826s are sent to the A-file for "each person who has contact with immigration" as part of the normal course of the Border Patrol's business, and that the information he obtained from the databases was consistent with the information recorded on the Field 826s.

Morales objected to the admission of the Field 826s on the grounds that they violated her confrontation rights, were inadmissible hearsay, and had been admitted without an adequate foundation.  The district court overruled these objections.  The court held that the forms were "non-testimonial because [they were] not made in anticipation of litigation."  Further, the court held that the forms qualified for a hearsay exception under Rule 803(6) of the Federal Rules of Evidence, which provides that business records which meet certain criteria are not excluded by the rule against hearsay.  *See* Fed. R. Evid. 803(6).

The district court found Morales guilty on all four counts and sentenced her to twenty-seven months in custody for each count, all of which were to be served concurrently.  Morales timely appealed.

**II**

We have jurisdiction under 28 U.S.C. § 1291. We review alleged violations of the Confrontation Clause and constructions of the hearsay rules de novo. *See United States v. Larson*, 495 F.3d 1094, 1101 (9th Cir. 2007) (en banc); *United States v. Olafson*, 203 F.3d 560, 565 (9th Cir. 2000). We review decisions to admit evidence pursuant to a hearsay exception for abuse of discretion. *See United States v. Alvarez*, 358 F.3d 1194, 1214 (9th Cir. 2004). When the district court admits evidence in violation of the Confrontation Clause, we must reverse the conviction unless the government can show that the error was harmless beyond a reasonable doubt. *See United States v. Bowman*, 215 F.3d 951, 961 (9th Cir. 2000). When it improperly admits hearsay, we may consider that error harmless "'unless we have grave doubt whether the erroneously admitted evidence substantially affected the verdict.'" *Alvarez*, 358 F.3d at 1214 (quoting *United States v. Ellis*, 147 F.3d 1131, 1134 (9th Cir. 1998)).

On appeal, Morales challenges the district court's admission of the Field 826s for the three aliens, arguing that the admission of these forms violated her rights under the Confrontation Clause and constituted inadmissible hearsay. She also argues that the Field 826s were not properly authenticated. She argues that because the forms were improperly admitted, the district court erred in relying on them as proof that the individuals she transported were aliens who were not lawfully in the United States, two elements of the offense of illegal transportation of aliens for private financial gain under 8 U.S.C. §§ 1324(a)(1)(A)(ii) & (a)(1)(B)(i). Accordingly, Morales argues that her conviction must be reversed. We address these contentions in turn.

**A**

We begin with Morales's claim that the district court violated her Confrontation Clause rights in admitting the Field 826s to prove the alienage and unlawful presence of the individuals, without giving her the opportunity to cross-examine the agents and aliens whose observations and admissions are recorded in the forms.

The Confrontation Clause of the Sixth Amendment states: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The Supreme Court has interpreted this language as barring "'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" *Davis v. Washington*, 547 U.S. 813, 821 (2006) (quoting *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004)). A statement falls within the "core class of testimonial statements" for purposes of the Confrontation Clause when it was "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009) (quoting *Crawford*, 541 U.S. at 51–52).

Under this rule, as *Melendez-Diaz* explained, business and public records "are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Id.* at 324. A business or public record is not "testimonial" due to "the mere possibility" that it could be

used in a later criminal prosecution. *United States v. Orozco-Acosta*, 607 F.3d 1156, 1164 (9th Cir. 2010). Rather, such records are testimonial only if there is some showing that the primary purpose of the record is for use in litigation. *See id.* at 1163–64. This "primary purpose" analysis is objective, and focuses on the primary purpose "reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred." *Michigan v. Bryant*, 131 S. Ct. 1143, 1156 (2011); *see also Orozco-Acosta*, 607 F.3d at 1163–64 (noting that a warrant of deportation is nontestimonial because "neither [its] sole purpose nor even its primary purpose is use at trial," but rather "to maintain records concerning the movement of aliens and to ensure compliance with orders of deportation." (quoting *United States v. Torres-Villalobos*, 487 F.3d 607, 613 (8th Cir. 2007))).

Like the warrants of removal considered in *Orozco-Acosta*, the Field 826s are nontestimonial because they were "created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial." *Id.* at 1163 (quoting *Melendez-Diaz*, 557 U.S. at 324). As is evident from the form itself, as well as Agent Wycoff's testimony about its use, a Border Patrol agent uses the form in the field to document basic information, to notify the aliens of their administrative rights, and to give the aliens a chance to request their preferred disposition. The Field 826s are completed whether or not the government decides to prosecute the aliens or anyone else criminally. *See, e.g.*, USCIS Inspector's Field Manual § 18.3(a)(2) (Charles M. Miller, ed., 2008) ("Aliens arrested under section 287(a)(2) of the Act [8 U.S.C. § 1357(a)(2)] will be provided with a Notice of Rights and Request for Disposition, Form I-826."). The nature and use of the Field 826 makes clear that its

primary purpose is administrative, not for use as evidence at a future criminal trial.  Even though statements within the form "may become 'relevant to later criminal prosecution,'" this potential future use "does not automatically place [the statements] within the ambit of 'testimonial.'" *Orozco-Acosta*, 607 F.3d at 1164 (quoting *United States v. Mendez*, 514 F.3d 1035, 1046 (10th Cir. 2008)).  Accordingly, we hold that neither the Field 826 itself, nor the statements within it, implicate the Confrontation Clause.

**B**

Because as a general matter the Field 826s are nontestimonial, we next turn to Morales's argument that the district court erred in admitting the Field 826s under an exception to the rule against hearsay.

Hearsay is a statement that a declarant "does not make while testifying at the current trial or hearing" and is "offer[ed] in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).  The Field 826s contain three types of statements: the agents' direct observations, the agents' recordings of the aliens' statements about their biographical information, and the aliens' signed requests for disposition.  Each type of statement must satisfy an exception to the rule against hearsay in order to be admitted for its truth.  *See* Fed. R. Evid. 805.

The district court admitted the Field 826s under the business records exception to the rule against hearsay.  *See* Fed. R. Evid. 803(6).  This was an error, because this exception does not apply to records of government agencies, which are public records for purposes of Rule 803.  *United States v. Orozco*, 590 F.2d 789, 793 (9th Cir. 1979); *see also*

*United States v. Ballesteros-Selinger*, 454 F.3d 973, 975 (9th Cir. 2006) (stating that documents that are part of an alien's A-file qualify as public records). Nevertheless, the government argues that we can uphold the district court's admission of the documents under the public records exception to the rule against hearsay. *See* Fed R. Evid. 803(8). Because we "may affirm the district court on any basis supported by the record," *Moreno v. Baca*, 431 F.3d 633, 638 (9th Cir. 2005), we turn to the question whether the Field 826s were admissible under this exception.

As relevant here, Federal Rule of Evidence 803(8) provides that public records are "not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness," Fed. R. Evid. 803, when the record is "[a] record or statement of a public office" that sets out either "the office's activities" or "a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel," and "neither the source of information nor other circumstances indicate a lack of trustworthiness."[4]

---

[4] Rule 803(8) states in full:

> (8) Public Records. A record or statement of a public office if:
>
> (A) it sets out:
>
> > (i) the office's activities;
> >
> > (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or

The government relied on two types of statements in the Field 826s to prove that the individuals in Morales's car were in the country illegally: the aliens' statements to the agents about their names and places of birth, and the aliens' signed admissions that they were in the United States illegally. We must consider whether these statements independently qualify for an exception to the rule against hearsay. *See Sana v. Hawaiian Cruises, Ltd.*, 181 F.3d 1041, 1045 (9th Cir. 1999). In general, statements by third parties who are not government employees (or otherwise under a legal duty to report) may not be admitted pursuant to the public records exception but must satisfy some other exception in order to be admitted. *See* 4 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 8:88 (3d ed. 2012) (noting that the exception allowing for a "matter observed while under a legal duty to report" in Rule 803(8) "generally does not pave the way for official records to prove conclusions resting on statements by outsiders or to prove what such outsider statements themselves assert" unless "the outsider's statement itself fits an exception"); *see also United States v. Pazsint*, 703 F.2d 420, 424 (9th Cir. 1983) ("It is well established that entries in a police report which result from the officer's own observations and knowledge may be admitted but that statements made by third persons under no business duty to report may not."). We have applied this analysis to statements made by aliens and reported by

---

> (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
>
> (B) neither the source of information nor other circumstances indicate a lack of trustworthiness.

Fed. R. Evid. 803(8).

government officials. *See, e.g.*, *Pena-Gutierrez*, 222 F.3d at 1087–88 (noting that an alien's statement to an immigration officer about his alienage was inadmissible hearsay-within-hearsay which had to be admitted under a separate exception to the hearsay rule); *see also United States v. Montes-Salas*, 669 F.3d 240, 253 (5th Cir. 2012) (testimony by Border Patrol agent that an alien told him that the defendant's phone number had appeared in her phone was hearsay-within-hearsay).

Here, the aliens' statements that they were in the United States illegally do not qualify as public records under Rule 803(8), because they do not describe "activities" of the government, and the government does not argue that aliens are under a "duty to report" their immigration status. *See* Fed. R. Evid. 803(8)(A). Had the aliens been unavailable, their statements might have been admissible under a separate exception, such as a "statement against interest" under Rule 804(b)(3) or a "statement of personal or family history" under Rule 804(b)(4). *See Olafson*, 203 F.3d at 565; *United States v. Winn*, 767 F.2d 527, 530 (9th Cir. 1985). But because the district court concluded that the government had failed to establish that the aliens were unavailable for purposes of Rule 804, their statements are not admissible under these exceptions. *See Pena-Gutierrez*, 222 F.3d at 1088. Nor has the government identified any other hearsay exception under which the statements might be admitted. Accordingly, neither the biographical statements by aliens recorded by the Border Patrol agents, nor the aliens' own admissions, qualify

under an exception to the rule against hearsay. The district court abused its discretion in admitting both statements.[5]

## C

The government argues that even if the district court erred in admitting all or part of the Field 826s, any error was harmless and did not substantially affect the verdict, because even without those documents there was sufficient evidence to demonstrate that the individuals in question were aliens who had unlawfully entered the United States.

The most important evidence at trial regarding the alienage of the individuals found in Morales's truck was Agent Wycoff's testimony that he had accessed and conducted research in three government databases, and that based on that research, he determined that the three aliens had no documentation allowing them to be present in the United States. Testimony to prove the absence of a public record is generally admissible under Federal Rule of Evidence 803(10). *See United States v. Diaz-Lopez*, 625 F.3d 1198, 1200 (9th

---

[5] We reject, however, Morales's argument that the Field 826s were improperly authenticated. To authenticate a document, a testifying witness need only show "personal knowledge that a document was part of an official file," *United States v. Estrada-Eliverio*, 583 F.3d 669, 673 (9th Cir. 2009) (citing Fed. R. Evid. 901), and need only make "a prima facie showing of authenticity so that a reasonable jury could find in favor of authenticity or identification." *Id.* (internal quotation marks and citation omitted); *see also* Fed. R. Evid. 901(b)(7). Here, Agent Wycoff testified that the Field 826s were "kept in the actual A-file for each person who has contact with immigration," and that a physical copy of the document is sent to the physical A-file as part of the normal course of business. This testimony would support a reasonable inference that the Field 826s were accurate copies of documents from the aliens' A-files, which were recorded and filed in a public office as required by law. *See id.*

Cir. 2010) (admitting Border Patrol agent's testimony that he had conducted a search of the agency's databases and found no evidence that the alien had applied for permission to enter the United States). Further, we agree with the district court's conclusion that the foundation for admission of this testimony was adequate. Agent Wycoff described the government's recordkeeping practices, his own training in the use of the databases, and how his duties as case agent involved the databases. He verified that he personally checked the databases and printed out records of his findings, and that he determined that the three aliens in question were without authorization to be in the United States on the basis of his research. We conclude that this testimony was sufficient to establish a foundation for his conclusion that the aliens were in the United States unlawfully. *See id.* (holding that the government may establish a foundation for testimony for the absence of a record in a database through testimony that the agent conducting the search was "familiar with both the process of searching the records and the government's recordkeeping practices with regard to the database.").

In addition to Agent Wycoff's testimony, the government introduced substantial circumstantial evidence tending to show that the individuals were aliens in the United States in violation of law. This evidence included Agent Brewer's testimony that he determined the aliens "were not legal citizens," Officer Kroeger's testimony about the location and manner in which he found the aliens, Jakaub's testimony about picking up the aliens in a trailer by the highway, the fact that the aliens in question had encountered immigration officials and were given Field 826s, and the fact that each of the aliens had an A-file. We conclude that this evidence, coupled with Agent Wycoff's testimony that the aliens lacked legal permission to be in the United States, demonstrates

beyond a reasonable doubt that the aliens were in the United States illegally. Accordingly, the district court's error in admitting the aliens' statements within the Field 826s did not substantially affect the verdict and was therefore harmless.

**AFFIRMED.**