**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

RAYMOND LEE FRYBERG, JR.,
*Defendant-Appellant.*

No. 16-30013

D.C. No.
2:15-cr-00109-JLR-1

OPINION

Appeal from the United States District Court
for the Western District of Washington
James L. Robart, District Judge, Presiding

Argued and Submitted March 8, 2017
Seattle, Washington

Filed April 21, 2017

Before: Susan P. Graber, Sandra S. Ikuta,
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Graber

## SUMMARY[*]

### Criminal Law

Affirming a conviction for possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(8), the panel held that a return of service that the Government used to prove that the defendant had been served with notice of a hearing on a domestic violence protection order was admissible under the public record exception to hearsay in Fed. R. Evid. 803(8)(A)(ii), and that admission of the return of service did not violate the defendant's rights under the Confrontation Clause of the Sixth Amendment.

The panel rejected the defendant's other arguments in a concurrently filed memorandum disposition.

### COUNSEL

John Henry Browne (argued), Law Office of John Henry Browne P.S., Seattle, Washington; Kany M. Levine, The Levine Law Firm PLLC, Seattle, Washington; for Defendant-Appellant.

Bruce Miyake (argued), Assistant United States Attorney; Annette L. Hayes, United States Attorney; United States Attorney's Office, Seattle, Washington; for Plaintiff-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

GRABER, Circuit Judge:

Defendant Raymond Lee Fryberg, Jr., appeals his conviction for possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(8). He argues several grounds for reversal, including the allegedly erroneous admission into evidence of a return of service that the Government used to prove that Defendant had been served with notice of a hearing on a domestic violence protection order. We conclude that the admission of the return of service did not violate either the rule against hearsay or the Confrontation Clause of the Sixth Amendment, and we affirm Defendant's conviction.[1]

## FACTUAL AND PROCEDURAL HISTORY

In August 2002, Jamie Gobin sought a domestic violence protection order against Defendant in a Tulalip tribal court near Marysville, Washington.[2] On August 19, the court issued a temporary protection order and a notice of hearing concerning a permanent protection order. Attempts to serve Defendant with the temporary protection order and the notice of the hearing were unsuccessful, prompting the tribal court to issue a second temporary order and hearing notice on August 27, setting the hearing for September 10, 2002. The next day, Officer Jesus Echevarria—a tribal police officer and

---

[1] In this opinion, we address only the issue of the admissibility of the return of service. We reject the other arguments raised by Defendant in a concurrently filed memorandum disposition.

[2] Defendant is a member of the Tulalip Tribes, as is Gobin.

Jamie Gobin's brother-in-law—filed a completed return of service with the tribal court. The return of service reads, in relevant part, as follows: "I served Raymond Lee Fryberg Jr. with the . . . Temporary Order for Protection and Notice of Hearing." The return states that service was effected on the evening of August 27 at the "[c]orner of Reuben Shelton Drive [and] Ellison James" Drive.

Defendant did not appear at the September 10 hearing. The tribal court took testimony from Jamie Gobin and her mother and entered a permanent domestic violence protection order. The order, which forbade Defendant from harassing Gobin and their son and from coming within 100 yards of Gobin's residence, was of indefinite duration. Although Tulalip law provides a mechanism by which a person subject to a protection order may seek to have the order modified or dissolved, Defendant never availed himself of that mechanism. He remained subject to the order at all times relevant to this appeal. During that time, he acquired several firearms.

In 2015, the Government filed a criminal complaint alleging that Defendant's possession of a Beretta PX4 Storm handgun violated § 922(g)(8), which prohibits persons who are subject to certain types of domestic violence protection orders from possessing firearms. A grand jury returned a one-count indictment, to which Defendant pleaded not guilty. A grand jury returned a superseding indictment, charging Defendant with six counts of violating § 922(g)(8). The new counts pertained to additional firearms—nine in all—that Defendant had obtained while under the protection order. Defendant again pleaded not guilty.

The case was tried to a jury. Because of Officer Echevarria's death just a month before trial, the Government had to rely on his 2002 return of service to prove that Defendant had been served with notice of the hearing that led to the permanent protection order—an essential element of its case. Defendant filed a pretrial motion in limine to exclude the return of service, arguing that its admission would violate both the rule against hearsay and the Confrontation Clause of the Sixth Amendment. The district court denied that motion.

At trial, Defendant's main strategy was to cast doubt on the veracity of the return of service. During his closing argument, for instance, defense counsel said the following:

> You heard Heather Gobin[, who is Jamie Gobin's sister and was Jesus Echevarria's wife in 2002,] testify that she told Jesus [that serving Defendant] was the most important thing to her in her life right now. So would that bring questions to your mind as to whether the government has proven beyond a reasonable doubt that that service actually occurred? There is no other evidence of it, other than this piece of paper, which we cannot cross-examine.

> Is it important for you to know? If he was alive and here, I could cross-examine him. Do you think it's appropriate to serve papers in a case where you're related to the people? Is that something that's okay, when there's 15 members in that police department, and you're just, coincidentally, the person who goes out and supposedly serves Mr. Fryberg?

That strategy failed, and the jury found Defendant guilty on all six counts of possession of a firearm by a prohibited person. Defendant timely appeals from the resulting judgment.[3]

## STANDARDS OF REVIEW

In reviewing a district court's evidentiary rulings, "the selection of the applicable standard of review is contextual: The de novo standard applies when issues of law predominate in the district court's evidentiary analysis, and the abuse-of-discretion standard applies when the inquiry is essentially factual." *United States v. Mateo-Mendez*, 215 F.3d 1039, 1042 (9th Cir. 2000) (internal quotation marks omitted). In reviewing an "essentially factual" ruling for abuse of discretion, "[w]e review . . . any underlying factual determinations for clear error." *United States v. Whittemore*, 776 F.3d 1074, 1077 (9th Cir. 2015).

We review de novo alleged violations of the Confrontation Clause. *United States v. Brooks*, 772 F.3d 1161, 1167 (9th Cir. 2014).

## DISCUSSION

In order to convict Defendant of violating § 922(g)(8), the Government was required to prove beyond a reasonable doubt that he possessed firearms while "subject to a court order that was issued after a hearing of which [he] received actual notice, and at which [he] had an opportunity to participate." 18 U.S.C. § 922(g)(8)(A). We have described the notice requirement of § 922(g)(8) as a "sub-element" of the offense.

---

[3] Defendant challenges his conviction, but not his sentence.

*United States v. Sanchez*, 639 F.3d 1201, 1204 (9th Cir. 2011). Defendant argues that the district court erroneously admitted the key piece of evidence[4] that the Government introduced to show that Defendant received actual notice of the hearing on the protection order—the return of service of the hearing notice.[5]  In particular, Defendant argues that (1) the district court erred in admitting the return of service as a "public record" under Federal Rule of Evidence 803(8) and (2) the admission of the return of service violated the Confrontation Clause of the Sixth Amendment.  We address those arguments in turn.

## A. Public Record Exception

The relevant portion of the return of service amounts to an out-of-court statement by Officer Jesus Echevarria to the effect that, "I served Defendant with notice of the hearing on the protection order."  Such a statement is hearsay.  Fed. R.

---

[4] In its response to Defendant's motion in limine, the Government characterized the return of service as "a critical document necessary for the government to meet its burden of proof beyond a reasonable doubt as to an element of the crime of unlawful possession of a firearm by a prohibited person—specifically, that the defendant received actual notice of a hearing."

[5] Defendant does not treat the "actual notice" and "opportunity to participate" sub-elements of § 922(g)(8) separately, but the gist of his argument goes to the "actual notice" sub-element.  It is clear from the record that Defendant had an "opportunity to participate" in the hearing within the meaning of § 922(g)(8)(A) if he received notice.  *See United States v. Young*, 458 F.3d 998, 1009 (9th Cir. 2006) (holding that, to prove that a defendant had an "opportunity to participate," the Government need only show that there was "a proceeding during which the defendant *could* have objected to the entry of the [protection] order or otherwise engaged with the court as to the merits of the . . . order").

Evid. 801(c). The district court held that the return of service was admissible nonetheless under the public records exception to hearsay in Rule 803(8). Specifically, the district court admitted the return of service under Rule 803(8)(A)(ii), which provides that "[a] record or statement of a public office [is admissible] if . . . it sets out a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel." Defendant argues that the return of service does not "set[] out a matter observed while under a legal duty to report" and that, even if it did, the law enforcement exception should have barred its admission. Those issues are essentially legal in nature, so we review them de novo. *Mateo-Mendez*, 215 F.3d at 1042. Defendant also argues that he "show[ed] that the source of information or other circumstances" surrounding the return of service "indicate[d] a lack of trustworthiness," such that the return of service should thus have been excluded under Rule 803(8)(B). That issue is essentially factual in nature, and we review the district court's ruling for abuse of discretion. *Id.*

### 1. Matter Observed While Under a Legal Duty to Report

We have held that a "legal duty to report" within the meaning of Rule 803(8)(A)(ii) may exist even in the absence of "a statute or regulation [that] expressly imposes duties to observe, report, and keep records." *United States v. Lopez*, 762 F.3d 852, 862 (9th Cir. 2014). The pertinent question is whether the creation and maintenance of the record at issue is "appropriate to the function of the" relevant government office, given "the nature of the responsibilities assigned to" that office. *Id.* For instance, a "verification of removal"—a document "designed to record the physical removal of [an] alien across the border," *id.* at 856—is the type of record that

the Department of Homeland Security ("DHS") would be expected to create and maintain in the course of carrying out its duties. Accordingly, a DHS official is "under a legal duty to report" within the meaning of Rule 803(8)(A)(ii) when preparing such a document. *Id.* at 862.

Here, the tribal court required that Defendant be served with notice of the hearing on the protection order. The return of service was intended to notify the tribal court that service had taken place and, thus, that the hearing on the protection order could proceed. We conclude that the completion of the return of service was "appropriate to the function" of the tribal court system and that, therefore, Officer Echevarria was under a legal duty to report when he completed the return of service.[6] We also conclude that the fact that service had been effected was a "matter observed" by Officer Echevarria. *See id.* at 861–62 (concluding that a DHS official who completed a verification of removal "observed" an alien's removal from the United States).

---

[6] It is true that Officer Echevarria was a tribal police officer and not an *employee* of the judiciary. But, insofar as he was instructed to carry out orders of the tribal court—such as serving Defendant with the notice of the hearing—his duties were owed to the court system. *Cf. Miller v. Gammie*, 335 F.3d 889, 895–96 (9th Cir. 2003) (en banc) (noting the "well-established and well-understood common-law tradition that extended absolute immunity to individuals performing functions necessary to the judicial process "); *Chabal v. Reagan*, 841 F.2d 1216, 1220 (3d Cir. 1988) (noting that "[United States] [M]arshals are officers of the executive branch," but that "federal courts . . . may direct their actions . . . pursuant to express statutory authority").

## 2.  Law-Enforcement Personnel Exception

Defendant argues that, even if the return of service is a record that sets out a matter observed while under a legal duty to report, it should not have been admitted under Rule 803(8)(A)(ii) because of the rule's law enforcement exception.  That exception—really, a *limitation* on the hearsay exception of Rule 803(8)(A)(ii)—provides that a record of "a matter observed by law-enforcement personnel" is not admissible as a public record in a criminal case.  As Defendant correctly points out, (1) this is a criminal case, and (2) Officer Echevarria was a law enforcement officer.  Given those two facts, the text of the law-enforcement personnel exception would seem to bar admission of the return of service.

But the exception is not quite as broad as its wording suggests.  "The Federal Rules of Evidence are, like many written laws, organic growths out of our common law," *United States v. Orellana-Blanco*, 294 F.3d 1143, 1150 (9th Cir. 2002), and must be construed with that pedigree in mind. Rule 803(8) grew out of the common-law public records exception to hearsay, which "developed to admit the sundry sorts of public documents for which no serious controversy ordinarily arises about their truth."  *Id.*  Considering that history, it would be natural to expect the law enforcement exception to cover only those records whose origins call into question their reliability.  Indeed, we have recognized that "the *purpose* of the law enforcement exception is to 'exclude observations made by officials at the scene of the crime or apprehension, because observations made in an adversarial setting are less reliable than observations made by public officials in other situations.'"  *Lopez*, 762 F.3d at 861 (quoting *United States v. Hernandez-Rojas*, 617 F.2d 533,

535 (9th Cir. 1980)). But "records of routine, nonadversarial matters made in a nonadversarial setting, reflecting ministerial, objective observations" of law enforcement personnel, *Orellana-Blanco*, 294 F.3d at 1150 (internal quotation marks and footnote omitted), *are* admissible in a criminal case, because such records are made under conditions that do not call into question their reliability, *United States v. Orozco*, 590 F.2d 789, 793–94 (9th Cir. 1979). Consistent with that narrow understanding of the law enforcement exception, we have held that several different types of records reflecting the observations of law enforcement personnel are admissible in criminal cases. *See id.* (holding that a record made by a customs inspector, stating that a car with a particular license plate had crossed the border at a particular time, was admissible as a public record); *see also Hernandez-Rojas*, 617 F.2d at 534–35 (holding that a warrant of deportation, which reflected an immigration officer's observation that an alien had been deported, was admissible as a public record).

We now hold that a return of service, such as the one in this case, is admissible as a public record under Rule 803(8)(A)(ii). The return of service recorded the completion of the largely ministerial task of serving Defendant with notice of a hearing.[7] The observation reflected in the return

---

[7] Serving a party with process or with notice of a hearing is generally a ministerial task. *See Finberg v. Sullivan*, 634 F.2d 50, 55 (3d Cir. 1980) (en banc) (noting that "the duties of the . . . sheriff in connection with the postjudgment garnishment procedures consist of issuing the writ of execution and serving it on the garnishee," duties that "are entirely ministerial"); *see also Levy Court v. Ringgold*, 30 U.S. 451, 454 (1831) ("[M]arshals of the United States . . . are considered as mere ministerial officers, to execute process when put into their hands, and not made the judges whether such process shall be issued.").

of service—that service had taken place—was an objective one, not the type of "subjective observation[], summar[y], opinion[,] [or] conclusion[] of law enforcement personnel" that Congress intended to exclude from the scope of the public records exception. *Orellana-Blanco*, 294 F.3d at 1150. Finally, the return of service at issue is similar to a sheriff's return, which was admissible at common law as a public record. *United States v. Union Nacional de Trabajadores*, 576 F.2d 388, 390–91 (1st Cir. 1978); *see also Lavino v. Jamison*, 230 F.2d 909, 911–12 (9th Cir. 1956) ("Sheriff's returns are documents executed by public officials who normally carry out their duties properly. It is more convenient to place the burden of going forward with the evidence to show that statements in a return are inaccurate on the party so asserting than to require a sheriff to be called away from his duties in every case."). "There is nothing to indicate that Congress meant to cut back upon the common law rule respecting sheriff's returns" when it codified the rule in the Federal Rules of Evidence. *Union Nacional de Trabajadores*, 576 F.2d at 391.[8]

### 3.  Rule 803(8)(B)

Defendant's final rule-related argument is that the district court should have excluded the return of service under Rule 803(8)(B), which bars admission if "the source of information

---

[8] Several state courts, interpreting state rules of evidence that are substantially similar to Rule 803(8), have held that returns of service prepared by law enforcement officers are admissible as public records in criminal cases. *See, e.g.*, *Frady v. Frady*, 58 P.3d 849, 852 (Or. Ct. App. 2002) ("Because service of the [restraining] order and the reporting of that service were routine, nonadversarial matters, the exclusion from the official records exception for matters observed by police officers is inapplicable.").

or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(B). Rule 803(8)(B) comes into play only if the party seeking to introduce a record succeeds in convincing a court that the record should be admitted under Rule 803(8)(A). The party opposing admission then bears the burden of showing that the record is untrustworthy. *See United States v. Loyola-Dominguez*, 125 F.3d 1315, 1318 (9th Cir. 1997) (construing a prior version of Rule 803(8)); *see also* Fed. R. Evid. 803(8) advisory committee's note to 2014 amendment ("The Rule has been amended to clarify that if the proponent has established that the record meets the stated requirements of the exception[,] . . . then the burden is on the opponent to show that the source of information or other circumstances indicate a lack of trustworthiness.").

Defendant offers two reasons to doubt the trustworthiness of the return of service. First, the location noted as the place of service on the return does not, according to Defendant, exist. Second, Officer Echevarria, who served the notice, was married to the sister of the woman who had sought the protection order against Defendant. According to Defendant, that relationship gave Officer Echevarria a "vested interest" in effecting service that makes the return of service untrustworthy.

The district court expressly considered the first argument and rejected it, finding that the place of service did exist. That finding is not clearly erroneous. Defendant's lawyer then pointed out for the first time the relationship between Echevarria and Defendant; the court did not alter its ruling on the admissibility of the return of service in light of that new

information.**⁹**     Given the relatively weak showing of untrustworthiness made by Defendant, the district court did not abuse its discretion in admitting the return of service.**¹⁰**

## B.  Confrontation Clause

Defendant next argues that, even if the return of service was properly admitted under Rule 803(8), its admission violated his Sixth Amendment right of confrontation.  We are not persuaded.

The Confrontation Clause "guarantees a defendant's right to confront those 'who "bear testimony"' against him." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309 (2009) (quoting *Crawford v. Washington*, 541 U.S. 36, 51 (2004)).

---

**⁹** Defendant's lawyer told the district court that Officer Echevarria was the brother of the woman who had sought the protection order against Defendant.  In fact, he was her brother-in-law.

**¹⁰** At trial, testimony was elicited from Officer Echevarria's widow that could support the theory that Echevarria was under pressure to serve Defendant and thus may have had a reason to falsify the return of service. But none of that evidence was in front of the district court at the time it ruled on the objection to the admissibility of the return of service.  In fact, Echevarria's widow did not testify until *after* the return of service had been admitted into evidence.  "It is important that a reviewing court evaluate the trial court's [evidentiary] decision[s] from its perspective when it had to rule and not indulge in review by hindsight." *Old Chief v. United States*, 519 U.S. 172, 182 n.6 (1997).  Morever, even if all the relevant trial testimony had been before the district court at the time it ruled, the court would not have abused its discretion by admitting the return.  The fact that Officer Echevarria was under pressure to serve Defendant does not necessarily undermine the reliability of the return of service.  It is at least as plausible to infer that the pressure on Officer Echevarria caused him to *actually* serve Defendant so as to satisfy his family.

"A witness's testimony against a defendant is . . . inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination." *Id.* But not all out-of-court statements implicate the Confrontation Clause—only statements whose "primary purpose" was testimonial trigger the constitutional requirement. *Ohio v. Clark*, 135 S. Ct. 2173, 2180 (2015). Statements made for primarily nontestimonial purposes—such as statements made during a 911 call for the purpose of facilitating police assistance, *Davis v. Washington*, 547 U.S. 813, 828 (2006)—are not subject to the Confrontation Clause's requirements. "The 'primary purpose' of a statement is determined objectively." *United States v. Rojas-Pedroza*, 716 F.3d 1253, 1267 (9th Cir. 2013). "That is, the relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred." *Michigan v. Bryant*, 562 U.S. 344, 360 (2011).

In the years since *Crawford* "rescued" the right of confrontation "from the grave," *Clark*, 135 S. Ct. at 2184 (Scalia, J., concurring in the judgment), the Supreme Court and this court have decided several cases that, taken together, help to clarify what types of public records (and statements contained therein) qualify as having a primarily "testimonial" purpose. Two of our post-*Crawford* decisions dealing with the testimonial nature of official documents are particularly instructive.

*United States v. Orozco-Acosta*, 607 F.3d 1156, 1162 (9th Cir. 2010), concerned warrants of removal, which are

immigration documents that contain "both [an] order[] that [an alien] be removed from the United States" and documentation of that alien's physical removal. We held that the warrant of removal[11] was not "testimonial" because it was "not made in anticipation of litigation, but rather to record the movements of aliens." *Id.* at 1163 (internal quotation marks omitted). That is, its primary purpose was not "use at trial" to establish some fact. *Id.* at 1164.

In *United States v. Bustamante*, 687 F.3d 1190, 1192–93 (9th Cir. 2012), we considered whether a document containing a transcription of the information from a birth certificate was testimonial in nature. The document was *not* a copy of the birth certificate; rather, it was, in essence, "an affidavit testifying to the contents of . . . birth records" that had been prepared "for the purpose of [a previous] investigation into [the defendant's] citizenship." *Id.* at 1194. We held that the document was testimonial in nature because it was prepared "at the request of the U.S. government for the purpose of its investigation into [the defendant's] citizenship." *Id.* Unlike an authenticated copy of the birth certificate, which likely would have been nontestimonial, the document was "a new record" created "for the purpose of providing evidence against" the defendant. *Id.*

This case lies somewhere between *Orozco-Acosta* and *Bustamante*. The return of service in this case was not "a new record" created at the behest of investigators "for the purpose of providing evidence against" Defendant, unlike the document at issue in *Bustamante*. But the return of service

---

[11] The portion of a warrant of removal that is most relevant to this case is the documentation that an alien has been physically removed from the United States.

established the existence of notice, which was necessary to make the protection order effective and to subject Defendant to criminal liability for violations of the order. In other words, the return of service is an important part of the mechanism by which protection orders are entered and enforced, and that enforcement is criminal in nature. *See* Tulalip Tribal Code § 4.25.550 ("Violation of a protection order is a crime.").[12] The return of service in this case thus had more of a criminal prosecutorial function than the immigration document at issue in *Orozco-Acosta*. More generally, a return of service of a notice of a hearing on a protection order seems more likely than an immigration document to be used in a later criminal proceeding and, for that reason, has a more testimonial purpose.

Nonetheless, "[a] business or public record is not 'testimonial' due to 'the mere possibility' that it could be used in a later criminal prosecution." *United States v. Morales*, 720 F.3d 1194, 1200 (9th Cir. 2013) (quoting *Orozco-Acosta*, 607 F.3d at 1164). The inquiry is whether the *primary* purpose of the record is "for use as evidence at a future criminal trial." *Id.* at 1201. Here, the primary purpose of the return of service was to inform the tribal court that Defendant had been served with notice of the hearing on the protection order, which enabled the hearing to proceed. Perhaps it was foreseeable to Officer Echevarria that the return of service might later be used in a criminal trial to establish the fact that Defendant had been served with notice, but that fact does not necessarily render the return of service

---

[12] It is generally true that one who violates a domestic violence protection order is subject to criminal penalties. *See, e.g.*, Wash. Rev. Code § 26.50.110 (2016) (violation of a protection order is at least a gross misdemeanor).

or the statements contained therein "testimonial" for purposes of the Confrontation Clause. Had the Government not produced a copy of the return of service but, instead, attempted to introduce a 2015 affidavit signed by Officer Echevarria stating that he had served Defendant with notice in 2002, this case would be closer to *Bustamante*. As it is, however, the Government introduced the return of service itself, a contemporaneous document owing its existence primarily to the tribal court's administrative needs. We hold that the admission of the return of service did not violate Defendant's rights under the Confrontation Clause.[13]

**AFFIRMED.**

---

[13] Several state courts have held that the admission of a return of service such as the one in this case does not violate the Confrontation Clause. *See, e.g.*, *State v. Copeland*, 306 P.3d 610, 627–28 (Or. 2013) (holding that a certificate of service showing that the defendant had been served with a protection order "was created . . . to serve the administrative functions of the court system" and thus did not have a primarily testimonial purpose); *see also Gaines v. State*, 999 N.E.2d 999, 1004–05 (Ind. Ct. App. 2013) (holding that the "primary purpose of the return of service [of an ex parte protective order] is administrative," and that such a return of service did not trigger the Confrontation Clause's requirements).