**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | No. 19-10069 |
| | D.C. No. 1:17-cr-00364-JMS-1 |
| v. | |
| TALOA LATU, *Defendant-Appellant*. | |
| | OPINION |

Appeal from the United States District Court
for the District of Hawaii
J. Michael Seabright, Chief District Judge, Presiding

Argued and Submitted July 7, 2022
Honolulu, Hawaii

Filed August 31, 2022

Before: Kim McLane Wardlaw, Jacqueline H. Nguyen,
and John B. Owens, Circuit Judges.

Opinion by Judge Nguyen

**SUMMARY**[*]

**Criminal Law**

The panel affirmed a conviction for assault resulting in serious bodily injury, a violation of 18 U.S.C. § 113(a)(6), in a case in which Taloa Latu, an inmate at a federal detention center, repeatedly punched and kicked inmate Joseph Yamaguchi, who suffered multiple serious injuries.

Yamaguchi did not testify, but the district court admitted his statements—that he was assaulted and that his pain level was an eight out of ten—through the testimony of a nurse and a surgeon who treated him.

Latu argued that admitting this testimony violated the rule against hearsay and the Confrontation Clause of the Sixth Amendment.

The panel held that the district court properly admitted the statements made by Yamaguchi to his medical providers, as the statements fell within the hearsay exception for statements made for purposes of medical diagnosis or treatment under Fed. R. Evid. 803(4). The panel also held that admission of these statements did not violate the Confrontation Clause because their primary purpose was to evaluate and treat Yamaguchi's injuries rather than to establish past facts for trial.

The panel addressed other issues in a concurrently filed memorandum disposition.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

DeAnna S. Dotson (argued), Dana Point, California, for Defendant-Appellant.

Michael Nammar (argued), Assistant United States Attorney; Marion Percell, Chief of Appeals; Judith A. Philips, Acting United States Attorney; United States Attorney's Office, Honolulu, Hawaii; for Plaintiff-Appellee.

**OPINION**

NGUYEN, Circuit Judge:

On September 11, 2016, Taloa Latu, an inmate at the Federal Detention Center (FDC) in Honolulu, repeatedly punched and kicked inmate Joseph Yamaguchi. Yamaguchi suffered multiple serious injuries, including a broken jaw. Latu was convicted following a jury trial of assault resulting in serious bodily injury, a violation of 18 U.S.C. § 113(a)(6).

At trial, Yamaguchi did not testify. The district court nevertheless admitted Yamaguchi's statements—that he was assaulted and that his pain level was an eight out of ten—through the testimony of a nurse and a surgeon who treated him. Latu argues that admitting this testimony violated the rule against hearsay and the Confrontation Clause of the Sixth Amendment.

We hold that the district court properly admitted the statements made by Yamaguchi to his medical providers. The statements fell within the hearsay exception for statements made for purposes of medical diagnosis or treatment under Fed. R. Evid. 803(4). The admission of these statements did not violate the Confrontation Clause

because their primary purpose was to evaluate and treat Yamaguchi's injuries rather than to establish past facts for trial. We therefore affirm Latu's conviction.[1]

## I.

### A. Factual Background

Latu's assault of Yamaguchi was captured on surveillance video played to the jury. Just before the incident, Latu was seen pacing back and forth and peering into a recreation room in the FDC. Inside the room, a handful of inmates including Yamaguchi were seated around a table playing cards. Latu opened the door and immediately began punching and kicking Yamaguchi, who fell to the floor. Once the attack ended, struggling to steady himself, Yamaguchi limped away with a large bloodstain on his shirt.

An hour and twenty-five minutes later, FDC staff saw visible swelling to Yamaguchi's jaw and eye and promptly sent him to the medical unit. Yamaguchi's jaw had been fractured in two places, requiring same-day surgery. Yamaguchi had also suffered face and rib fractures, face and eyebrow lacerations, and a concussion.

Yamaguchi saw Nurse Daniel Chi at the FDC health unit. Chi's practice is to perform "a head-to-toe assessment to determine what was injured, extent of injury, and then course of action." As part of that assessment, Chi asks about the cause of a patient's injuries because the "[m]echanism of injury can also play into the severity of the injury." When asked, Yamaguchi initially responded that he had fallen out

---

[1] We address Latu's other issues on appeal in a concurrently filed memorandum disposition.

of bed.  But given the extent of the injuries, Chi did not believe that explanation and pressed further.  Yamaguchi then admitted that he was assaulted.

Nurse Chi's practice is also to ask patients about their subjective pain level.  He explained that "pain is a very subjective type of symptom" and that an initial pain level provides a "starting point" to monitor during treatment. When asked, Yamaguchi said that his pain level was an eight out of ten, with his jaw as his greatest source of pain.

Yamaguchi was transported that same day to the emergency room at Queen's Medical Center.  He was treated there by oral and maxillofacial surgeon Dr. James Michino. Dr. Michino's "first question" with patients is always "what happened."  He tries "to gather as much information as possible regarding the traumatic injury."  That includes the cause of a patient's injuries because "the amount of force" involved in an injury can alert him to "possible injuries that could get missed."  When Dr. Michino asked, Yamaguchi responded that while he did not "remember the details," he "was assaulted" and "essentially lost consciousness."

## B. Procedural History

Latu was charged with assault resulting in serious bodily injury under 18 U.S.C. § 113(a)(6).  Yamaguchi did not testify at trial.  The government instead moved to admit his statements about the cause of his injuries and his pain level through the testimony of his medical providers under Fed. R. Evid. 803(4).  Over Latu's objection, the district court admitted the statements.

The jury returned a guilty verdict, and the district court sentenced Latu to 96 months' imprisonment.  Latu timely appealed.

## II. Jurisdiction and Standard of Review

We have jurisdiction under 28 U.S.C. § 1291. We review evidentiary rulings for abuse of discretion, *see United States v. Perez*, 962 F.3d 420, 434 (9th Cir. 2020), and Confrontation Clause rulings de novo, *see United States v. Fryberg*, 854 F.3d 1126, 1130 (9th Cir. 2017).

## III. Federal Rule of Evidence 803(4)

Latu contends that Nurse Chi and Dr. Michino's testimony about Yamaguchi's statements was hearsay and did not meet the exception for statements for medical diagnosis or treatment. Rule 803(4) applies to "[a] statement that: (A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." Fed. R. Evid. 803(4).

This hearsay exception reflects the view that statements for medical diagnosis or treatment "are made under circumstances in which the declarant would be particularly unlikely to lie." *United States v. Kootswatewa*, 893 F.3d 1127, 1132 (9th Cir. 2018). That is because a patient has a "selfish interest in obtaining appropriate medical care." *Id.* "An individual seeking medical care is unlikely to lie about her medical history or symptoms because she knows that 'a false statement may cause misdiagnosis or mistreatment.'" *Id.* (citation omitted); *see McCormick on Evidence* § 277 (8th ed. 2022) (discussing "selfish treatment motivation").

Yamaguchi's statements to Nurse Chi and Dr. Michino plainly fall within both prongs (A) and (B) of Rule 803(4). Nurse Chi and Dr. Michino both testified that Yamaguchi told them that the "general cause" of his injuries was an assault. Fed. R. Evid. 803(4)(B). Yamaguchi's statements

were made to medical providers during their clinical assessment of his traumatic injuries within hours of receiving those injuries. Both Nurse Chi and Dr. Michino testified that they asked about the cause of Yamaguchi's injuries because it would inform their evaluation and treatment. Nurse Chi explained that the cause helped him determine an injury's severity, and Dr. Michino stated that knowing the cause would help him avoid missing possible injuries. This context demonstrates that Yamaguchi's statements were "made for—and [were] reasonably pertinent to—medical diagnosis or treatment." Fed. R. Evid. 803(4)(A). *See Kootswatewa*, 893 F.3d at 1133 ("An adequate foundation may be laid under Rule 803(4) by introducing objective evidence of the context in which the statements were made . . . , includ[ing] testimony provided by the medical professional who conducted the examination.").

Nurse Chi also testified that Yamaguchi said his pain level was an eight out of ten. That statement was about "present symptoms or sensations," Fed. R. Evid. 803(4)(B), and it was made during the same clinical assessment described above. Nurse Chi testified that he asks about a patient's pain level because pain is subjective and an initial level provides a "starting point" to track during treatment. Yamaguchi's statement about his pain level was thus also "made for—and [was] reasonably pertinent to—medical diagnosis or treatment." Fed. R. Evid. 803(4)(A); *see United States v. Santos*, 589 F.3d 759, 763 (5th Cir. 2009) (affirming admission of nearly identical pain level testimony under Rule 803(4)).

Therefore, we hold that the district court properly admitted Nurse Chi's and Dr. Michino's testimony about Yamaguchi's statements under Rule 803(4).

## IV. Confrontation Clause

Latu next argues that the admission of Yamaguchi's statements violated the Confrontation Clause of the Sixth Amendment.  The Confrontation Clause provides that "[a] witness's testimony against a defendant is . . . inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination."  *Fryberg*, 854 F.3d at 1134 (quoting *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309 (2009)).  But "only statements whose 'primary purpose' was *testimonial* trigger the constitutional requirement."  *Id.* (quoting *Ohio v. Clark*, 576 U.S. 237, 244 (2015)) (emphasis added).  Testimonial statements resemble "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact."  *Crawford v. Washington*, 541 U.S. 36, 51 (2004) (citation omitted).  Examples can include affidavits, depositions, prior testimony, or police interrogation.  *See United States v. Esparza*, 791 F.3d 1067, 1071–72 (9th Cir. 2015).

To assess whether statements are testimonial, we apply a "'primary purpose' test."  *Clark*, 576 U.S. at 244.  We ask whether out-of-court statements "result from questioning, 'the primary purpose of [which was] to establish or prove past events potentially relevant to later criminal prosecution,'" and whether they are "'functionally identical to live, in-court testimony,' 'made for the purpose of establishing or proving some fact' at trial."  *Lucero v. Holland*, 902 F.3d 979, 989 (9th Cir. 2018) (first quoting *Davis v. Washington*, 547 U.S. 813, 822 (2006); and then quoting *Melendez-Diaz*, 557 U.S. at 310–11).  "[W]e objectively evaluate the circumstances in which the encounter occurs and the statements and actions of the

parties." *Id.* (quoting *Michigan v. Bryant*, 562 U.S. 344, 359 (2011)).

Statements aimed at meeting an ongoing emergency are generally not testimonial. While not "dispositive," "[t]he existence of an emergency or the parties' perception that an emergency is ongoing is among the most important circumstances that courts must take into account." *Bryant*, 562 U.S. at 366, 370. That is because an ongoing emergency "focuses the participants on something other than 'prov[ing] past events potentially relevant to later criminal prosecution.'" *Id.* at 361 (quoting *Davis*, 547 U.S. at 822). "[I]t focuses them on 'end[ing] a threatening situation.'" *Id.* (quoting *Davis*, 547 U.S. at 832). For example, in *Clark*, the Supreme Court held that a three-year-old abuse victim's statements to his teachers identifying his abuser were not testimonial because the "[teachers'] questions and [the student's] answers were primarily aimed at identifying and ending the threat." 576 U.S. at 247. In *Bryant*, the Court held that a wounded man's statements to police about how he was shot were not testimonial because they were elicited "to allow the police to 'assess the situation, the threat to their own safety, and possible danger to the potential victim,' and to the public." 562 U.S. at 376 (quoting *Davis*, 547 U.S. at 832).

Here, too, Yamaguchi's statements to Nurse Chi and Dr. Michino had the primary purpose of meeting the ongoing emergency presented by Yamaguchi's traumatic injuries. Yamaguchi sought help only an hour and twenty-five minutes after he was attacked. Yamaguchi had visible injuries, including dramatic swelling around his jaw and eye, as well as bruising, lacerations, and abrasions. Yamaguchi was evaluated by Dr. Michino for same-day jaw surgery after being transported to the emergency room. As discussed

above, both Nurse Chi and Dr. Michino testified that they asked Yamaguchi how he was injured to better understand the type and severity of injuries from which he was still suffering. Nurse Chi and Dr. Michino elicited information about the cause of Yamaguchi's injuries not to prosecute his assailant but to help address the ongoing threat to his health created by his injuries.

The same is true of Yamaguchi's statement about his pain level. Nurse Chi explained that pain is "subjective," and he needed a "starting point" to track over time. There is no indication that the true purpose of Nurse Chi's question and Yamaguchi's answer was "establishing or proving" Yamaguchi's pain level "at trial." *Lucero*, 902 F.3d at 989 (quoting *Melendez-Diaz*, 557 U.S. at 310–11). Rather, Nurse Chi wanted information to help evaluate and effectively treat Yamaguchi's pain among his other injuries. *See Santos*, 589 F.3d at 763 (5th Cir.) (holding that an inmate's nearly identical statement about his pain level to a prison nurse was "for medical treatment to 'meet an ongoing emergency'" rather than "to gather evidence for trial or prison disciplinary proceedings").

Other factors bolster this conclusion. First, Yamaguchi's medical providers were not responsible for obtaining and preserving evidence for trial. *Clark* explained that "[s]tatements made to someone who is not principally charged with uncovering and prosecuting criminal behavior are significantly less likely to be testimonial than statements given to law enforcement officers." 576 U.S. at 249. Just as the preschool teachers in *Clark* had a role to play in keeping students safe, rather than prosecuting crime, Nurse Chi's and Dr. Michino's jobs were to treat Yamaguchi's injuries rather than to collect evidence to prosecute his assailant.

That a statement is made in a medical context is "highly relevant" to the primary purpose analysis. *Id.* We held above that Yamaguchi's statements were admissible under Rule 803(4) because they were made for purposes of medical diagnosis or treatment. "[S]tandard rules of hearsay, designed to identify some statements as reliable, will be relevant" to the primary purpose inquiry. *Bryant*, 562 U.S. at 358–59. The Supreme Court has suggested that such statements are likely to be non-testimonial because Rule 803(4) "rest[s] on the belief" that statements for diagnosis or treatment "are, by their nature, made for a purpose other than use in a prosecution." *Id.* at 362 n.9; *see Kootswatewa*, 893 F.3d at 1132 (explaining patient's "selfish interest in obtaining appropriate medical care"). Rule 803(4) covers statements that address an ongoing medical situation and will generally filter out statements designed to establish past facts to aid a prosecution.

In the ordinary case, therefore, statements made for medical diagnosis or treatment likely will not be testimonial.[2] However, we adopt neither a categorical rule nor a presumption to this effect. Before the Supreme Court in *Crawford* adopted a new approach to the Confrontation

---

[2] Indeed, several circuits have held that statements for medical purposes are non-testimonial. *See United States v. Gonzalez*, 905 F.3d 165, 202 (3d Cir. 2018) ("Belford's statements to her therapist are not testimonial in nature [because] the purpose of Belford's visits were to receive therapy to treat her anxiety and depression [and] not to create a record for a future prosecution."); *United States v. Barker*, 820 F.3d 167, 171–72 (5th Cir. 2016) (holding that a child sexual abuse victim's statements to a nurse about the defendant's abuse were nontestimonial because the victim's "well-being and health were the principal focus"); *United States v. Norwood*, 982 F.3d 1032, 1051 (7th Cir. 2020) (holding that a sex trafficking victim's statements to a nurse "about what had happened and when . . . were for the primary purpose of medical treatment" and were "nontestimonial").

Clause, we categorically rejected Confrontation Clause challenges to statements admitted under Rule 803(4) because we considered that exception to be "firmly rooted." *See United States v. George*, 960 F.2d 97, 99 (9th Cir. 1992) ("When hearsay testimony is properly admitted pursuant to this exception, no further guarantees of trustworthiness are required."). However, *Crawford* recognized that "the Framers" did not "leave the Sixth Amendment's protection to the vagaries of the rules of evidence," 541 U.S. at 61, and it rejected such categorical treatment of Confrontation Clause arguments. *Crawford* requires that we consider "all of the relevant circumstances," *Bryant*, 562 U.S. at 369, and circumstances may arise in which statements for medical purposes will be testimonial.

Latu contends such circumstances exist here because Nurse Chi was an employee of the Bureau of Prisons (BOP) and had a limited power of arrest under 18 U.S.C. § 3050. But the Supreme Court has held that even a questioner's "duty to report" criminal conduct "cannot convert a conversation . . . into a law enforcement mission." *Clark*, 576 U.S. at 249. Latu points to nothing in the record indicating that Nurse Chi had any closer relationship to law enforcement functions. Even if Nurse Chi had a power of arrest as a BOP employee, that played no role in his assessment of Yamaguchi, and it did not turn Chi's mission of providing medical care into an effort to prosecute Yamaguchi's assailant.

A second factor pertinent here is the extent of Yamaguchi's injuries. A victim's medical condition "provides important context for first responders to judge the existence and magnitude of a continuing threat to the victim, themselves, and the public." *Bryant*, 562 U.S. at 365. Even if Yamaguchi was not incapacitated or cognitively impaired,

he was suffering from extreme pain with fractures to his jaw, face, and ribs; lacerations to his face and eyebrows; and a concussion. Such severe injuries and pain would focus both patient and provider on promptly evaluating and treating Yamaguchi's condition rather than on a more remote goal like establishing past facts for prosecution.

A third relevant factor is that the conversations lacked the formality that often accompanies testimonial statements. *See id.* at 366. Without the structure of stationhouse questioning or an affidavit, a medical examination can give rise to a more "informal and spontaneous" flow of information. *Clark*, 576 U.S. at 247. Nothing suggests that the setting of Yamaguchi's conversations with Nurse Chi or Dr. Michino was designed to establish past facts for trial.

Latu argues that Yamaguchi's statements were testimonial because they "were seeking to determine 'what happened' not 'what is happening.'" But past-tense statements are not per se testimonial. Information about past events can have the primary purpose of informing future action. The ongoing emergency cases discussed above involved statements about past events that shaped a response to a present threat. *See Clark*, 576 U.S. at 246 (abuse victim's statement about how he was injured informed "whether it was safe to release [him] to his guardian at the end of the day"); *Bryant*, 562 U.S. at 376 (victim's statements about past shooting informed officers about the type and severity of any ongoing threat).

We therefore conclude that the primary purpose of Yamaguchi's statements to Nurse Chi and Dr. Michino was not testimonial. Accordingly, the admission of those out-of-court statements did not violate the Confrontation Clause.

**AFFIRMED.**