**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   20-50057 |
| Plaintiff-Appellee, | D.C. No. 2:13-cr-00484-CAS-6 |
| v. | |
| MANUEL LARRY JACKSON, AKA 49, AKA Cricket, AKA Arthur Rodriguez, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted August 16, 2023
Pasadena, California

Before: WARDLAW, CHRISTEN, and SUNG, Circuit Judges.

Manuel Larry Jackson appeals his jury conviction on one count of

possession with intent to distribute methamphetamine in violation of 21 U.S.C.

§§ 841(a) and 841(b)(1)(A) based on a January 31, 2012, transaction. We have

jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

1. The district court did not err in denying Jackson's motion for acquittal on

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

the methamphetamine possession charge. Where, as here, "a defendant moved for acquittal before the district court, this court reviews de novo whether sufficient evidence exists to support a guilty verdict." *United States v. Suarez*, 682 F.3d 1214, 1218 (9th Cir. 2012) (citation omitted). Where a record supports "conflicting inferences," we "must defer to [the jury's] resolution" and uphold the jury's verdict so long as "*any* rational trier of fact [could find] the essential elements of the crime beyond a reasonable doubt." *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc) (quotations omitted).

It was not unreasonable for the jury to infer that the substance Jackson received on January 31, 2012, was methamphetamine. Jackson's arguments focus on the weight and meaning of a handful of recorded conversations about the January 31 transaction. But he does not dispute that other evidence shows that: (1) Packages originating from Jackson's methamphetamine supplier, Freddie Montes, and recovered before and after January 31, contained methamphetamine. (2) Jackson negotiated for methamphetamine with Montes multiple times before the January 31 transaction. (3) On at least one occasion after the January 31 transaction, Jackson told a government informant, Ralph Rocha, that he had received a two-pound package and did not complain about the quality of the product received. (4) Montes asked Rocha when he could expect payment from Jackson after the January 31 transaction. Based on this evidence, a reasonable jury

could find that the substance Jackson received on January 31 was methamphetamine.

2. The district court did not err in admitting certain statements made by Montes under Federal Rule of Evidence 801(d)(2)(E). We "review for an abuse of discretion the district court's decision to admit coconspirators' statements, and review for clear error the district court's underlying factual determinations that a conspiracy existed and that the statements were made in furtherance of that conspiracy." *United States v. Moran*, 493 F.3d 1002, 1010 (9th Cir. 2007) (quotation omitted). The party introducing the statement has the burden by a preponderance of the evidence to "produce some independent evidence which, viewed in light of the coconspirator statements, establishes the requisite connection between the accused and the conspiracy." *United States v. Saelee*, 51 F.4th 327, 342 (9th Cir. 2022) (quotation omitted). Further, there must be "proof of a sufficient concert of action to show the individuals to have been engaged in a joint venture." *United States v. Fries*, 781 F.3d 1137, 1151 (9th Cir. 2015) (quotation omitted). A district court may find there is a joint venture for purposes of Rule 801(d)(2)(E) even if that venture would not constitute a criminal conspiracy under substantive criminal law. *Id.*

Jackson's contention that the government did not meet its burden because it failed to show sufficient "agreement" between Jackson and Montes, who were

"mere buyer and seller . . . not co-conspirators," erroneously conflates the standard required to establish criminal liability for conspiracy with the standard for introducing evidence under Rule 801(d)(2)(E). Applying the correct standard here, the recorded conversations in the record amply support a finding that Jackson and Montes had embarked in a joint venture to purchase and distribute controlled substances and that the statements the government sought to admit were made by Montes in furtherance of that joint venture.

3. The district court did not abuse its discretion in admitting the lay opinion testimony of law enforcement officer Jose Urita. *See United States v. Gadson*, 763 F.3d 1189, 1209 (9th Cir. 2014). An officer may provide lay opinion testimony and interpret "ambiguous conversations based upon [their] direct knowledge of [an] investigation." *United States v. Freeman*, 498 F.3d 893, 904 (9th Cir. 2007). An officer may not, however, "testify based on speculation, rely on hearsay or interpret unambiguous, clear statements." *United States v. Perez*, 962 F.3d 420, 435 (9th Cir. 2020) (quotation omitted).

At trial, the government laid a foundation for Urita's testimony as an officer who, over the course of several months, investigated Jackson and Montes and listened to all the recordings between them. Although Jackson argues that Urita's opinion testimony relied at least in part on hearsay, he does not identify any specific hearsay statements that Urita purportedly relied on for any of his opinions

4

or interpretations, and nothing in Urita's testimony suggests that he relied on the truth of the content of prior out-of-court statements to form those opinions.

4. The district court did not violate Jackson's Sixth Amendment rights under the Confrontation Clause by allowing the government to present certain out-of-court recorded statements made by Rocha. "We review de novo alleged violations of the Confrontation Clause." *United States v. Fryberg*, 854 F.3d 1126, 1130 (9th Cir. 2017) (citation omitted). Where an "informant's statements were not admitted for their truth, [but to show context,] the admission of such context evidence does not offend the Confrontation Clause." *United States v. Barragan*, 871 F.3d 689, 705 (9th Cir. 2017) (quotation and citation omitted); *see also United States v. Valerio*, 441 F.3d 837, 844 (9th Cir. 2006).

The district court correctly found that Rocha's testimony was admissible for the purpose of providing context under *Barragan* and *Valerio*. Both cases involved similar situations where the government recorded the defendants' conservations using an informant, and then sought to admit the informant's out-of-court statements in the recordings to provide context for the defendants' statements. *See Barragan*, 871 F.3d at 704; *Valerio*, 441 F.3d at 839. Jackson attempts to distinguish these cases by arguing that, here, the government admitted a greater number of recordings and that those recordings were more central to the government's case. But the holdings of *Barragan* and *Valerio* were not

5

conditioned on the number of recordings presented, or the centrality of the recordings to the government's case. Accordingly, consistent with *Barragan* and *Valerio*, the district court correctly found that Rocha's statements were admissible to show context, and not the truth of the matter asserted.

5. The district court did not violate Jackson's Sixth Amendment right to present a defense by barring him from calling Rocha to testify. We review de novo whether there has been a violation of the Sixth Amendment right to make a defense. *United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010). We have adopted the so-called *Miller* factors to evaluate "whether evidence erroneously excluded was so important to the defense that the error assumes constitutional magnitude." *Id.* at 756. These factors include:

> [1] the probative value of the evidence on the central issue; [2] its reliability; [3] whether it is capable of evaluation by the trier of fact; [4] whether it is the sole evidence on the issue or merely cumulative; and [5] whether it constitutes a major part of the attempted defense.

*Alcala v. Woodford*, 334 F.3d 862, 877 (9th Cir. 2003) (quoting *Miller v. Stagner*, 757 F.2d 988, 994 (9th Cir. 1985)).

Here, Jackson argues that it was constitutional error to exclude Rocha's lay opinion testimony as irrelevant, because Rocha could have undermined Urita's lay opinion testimony by providing alternative interpretations about the meaning of the words "crumbs" and "nada" in a recorded conversation between Rocha and Jackson. We need not determine whether the district court erred in excluding this

testimony, because Jackson has not demonstrated that the purported error assumed constitutional magnitude under the *Miller* factors.

First, at trial, Jackson's counsel did not clearly tell the district court that Rocha would provide probative lay witness testimony on a central issue to Jackson's defense and theory of the case. Although counsel stated that she intended to call Rocha to provide a lay opinion on the content of certain recorded conversations, she did not identify which conversations Rocha would interpret or explain how Rocha's testimony on the meaning of these conversations was a "major part of the attempted defense," *Miller*, 757 F.2d at 994. Unlike in the briefing on appeal, counsel did not specifically explain to the district court that Rocha was needed to provide lay testimony about the meaning of the words "crumbs" or "nada." Furthermore, before the district court, counsel equivocated when explaining the specific purpose and scope of Rocha's testimony, and conceded that at least part of the testimony was irrelevant to the issues the jury would decide.

Second, trial counsel did not explain how Rocha was qualified as a lay witness to interpret certain words, other than to briefly state that Rocha participated in certain recorded conversations.

Finally, counsel did not draw a clear distinction between Rocha's subjective understanding of certain words, which counsel conceded was "not relevant," and

his lay opinion testimony on the meaning of contested words, which counsel argued was relevant. Accordingly, we conclude that Rocha's lay opinion testimony was not central to his defense or a major part of the attempted defense. Consequently, the exclusion of that testimony did not rise to the level of constitutional significance under the *Miller* factors.[1]

6. The district court did not err in denying Jackson's motion to dismiss the indictment based on outrageous government conduct during the criminal investigation underlying his case. "We review the district court's decision not to dismiss the indictment for outrageous government misconduct de novo, viewing the evidence in the light most favorable to the government." *United States v. Pedrin*, 797 F.3d 792, 795 (9th Cir. 2015) (citing *United States v. Black*, 733 F.3d 294, 301 (9th Cir. 2013)). In *Black*, we identified six relevant factors to assess whether the government's conduct is outrageous:

> (1) known criminal characteristics of the defendants; (2) individualized suspicion of the defendants; (3) the government's role in creating the crime of conviction; (4) the government's encouragement of the defendants to commit the offense conduct; (5) the nature of the government's participation in the offense conduct; and (6) the nature of

---

[1] Even when error is "not of constitutional magnitude, we must reverse . . . unless it is more probable than not that the error did not materially affect the verdict." *United States v. Gonzalez-Flores*, 418 F.3d 1093, 1099 (9th Cir. 2005) (cleaned up) (citation omitted). Here, however, Jackson argues only that the district court's error was of constitutional magnitude. He does not argue in the alternative that, even if the purported error was not of constitutional magnitude, it was sufficiently prejudicial such that reversal is warranted. Because the latter issue was forfeited, we decline to address it.

the crime being pursued and necessity for the actions taken in light of the nature of the criminal enterprise at issue.

733 F.3d at 303. "[T]he first three are most relevant to the way in which the government set[s] up [an investigation]," "the fourth and fifth look to the propriety of the government's ongoing role" in the operation, and the sixth "focuses on the justification for the operation." *Pedrin*, 797 F.3d at 796 (quotations omitted).

Jackson argues that in December 2011, certain government informants threatened Montes and his brother, and that these threats coerced Montes into carrying out the January 31, 2012, transaction involving Jackson. This characterization of the December 2011 events is unsupported by the record, the district court made no findings to this effect, and it appears Jackson did not even characterize this incident as involving such threats below. We have no basis to conclude that the December 2011 operation constituted a threat or coercion for the purpose of the *Black* factors, or that the district court otherwise erred in its analysis of these factors.[2]

7. Because Jackson has not identified multiple trial errors, his cumulative error claim also fails.

**AFFIRMED**.

---

[2] Similarly, Jackson's assertions about a supposed cover up relating to the December 2011 operation are unsupported by the record. The district court considered evidence of this alleged cover up and found no such cover up existed. Jackson provides no justification to disturb this finding on appeal.

9